[No. 928.    January 14, 1903.]

## THE TERRITORY OF NEW MEXICO, Appellee, v. LEVI CLAYPOOL and ESPERIDION LUERAS, Appellants.

### SYLLABUS.

1.  When the caption to an indictment reads, "Territory of New Mexico, County of Socorro. In the District Court at the April Term A. D. 1900," such indictment will not be quashed on the grounds that it does not describe the court where it was found, or state the place where the court was sitting when the indictment was returned.

2.  An indictment under our laws for purchasing stolen live stock, need not state from whom said live stock was purchased it is sufficient if it states that they were bought from a person or persons not having the lawful right to sell and dispose of the same.

3.  A bill of sale for live stock claimed to have been sold and purchased, should be received in evidence, even if it is not properly witnessed and acknowledged as required by law.

4.  It is proper for the trial court to sustain objections to questions which only call for the expression of an opinion by a witness, who is not testifying as an expert.

5. It is error for the court to give an instruction as to conspiracy, unless the evidence shows such conspiracy.

6. A trial court properly overrules a motion for a new trial on the ground of newly-discovered evidence, unless it fulfills the following requirements: (1) It must be such as will probably change the result if a new trial is granted; (2) it must have been discovered since the trial; (3) it must be such as could not have been discovered before the trial by the exercise of due diligence; (4) it must be material to the issue; (5) it must not be merely cumulative to the former evidence; (6) it must not be merely impeaching or contradicting the former evidence.

Appeal from the district court of Socorro county, before D. H. McMILLAN, Associate Justice. Reversed and remanded.

FERGUSSON & GILLETT and H. M. DOUGHERTY for appellants.

"Possession of the goods may, as in larceny, and under like rules and with like effect, be evidenced against the receiver, but the proper accompanying proofs must appear, or it will amount to nothing."

2 Bish. Crim. Proc., sec. 899; Durant v. People, 13 Mich. 351; Castleberry v. State, 33 S. W. 875.

The guilty knowledge is the gist of the offense.

State v. Hunter, 75 Mo. App. —; George v. State, 78 N. W. (Neb.) 259.

An unacknowledged, unrecorded bill of sale of property, while it might not under the law vest the legal title in the vendee, would be evidence in a prosecution for theft of such property, to prove such ownership in said property, as the law in such case recognized as sufficient.

Morrow v. State, 22 Tex. App. 249; see also Williams v. State, 30 Tex. App. 155; Buchanan v. State, 26 Tex. App. 52.

The statute does not contemplate the giving of bills of sale by or from the true owner of domestic animals.

Gale v. Salas, 66 Pac. 521.

Denial of the right of cross examination,

Confessions at most are received with extreme cau-tion.

> King v. State, 18 Tex. 387; Clay v. State, 2 Tex. App. 127; 2 Bish. Crim. Proc., sec. 1216.

It is error to so far restrict the right of cross exami-nation, as to prevent the cross examining party from going into all matters connected with the examination in chief.

> 1 Thomp. on Trials, p. 406; Wharton on Evidence, p. 529; Martin v. Elden, 32 Ohio St. 283; 6 Am. and Eng. Enc. of Pl. and Pr., 114.

An instruction on conspiracy when there is no evi-dence to justify it is reversible error.

> Crane v. State, 111 Ala. 45, 20 So. 580; Spencer v. State, 77 Ga. 150.

Is it necessary that the indictment should state from whom the stolen property was received, or that such fact was unknown to the grand jurors?

Mr. Bishop says: "This question belongs to a class upon which there may not unreasonably be differences of opinion."

> 2 Bish. Crim. Proc., sec. 983; State v. Beatty, Phillips (N. C.) 52; State v. Perkins, 45 Tex. 10; U. S. v. De Bon, 6 Bis. 358; Broth-ers v. State, 22 Tex. App. 462.

EDWARD L. BARTLETT, Solicitor-General, for ap-pellee.

It is well settled that the caption is no part of the indictment in courts of general original jurisdiction.

> 1 Bish. Crim. Proc., secs. 661, 664, 668; Leonardo v. Territory, 1 N. M. 291-3; Tenoris v. Territory, 1 N. M. 280-282.

An indictment for receiving stolen goods, known to be stolen, need not state the name of the thief, but if it does, the evidence must correspond with the allegation.

1 Bish. Crim. Proc., sec. 483; Com. v. King, 9 Cush. (Mass.) 284; Counts v. State, 37 Tex. 593.

Where a statute defines the offense which it creates it is ordinarily adequate, while nothing else will suffice, to charge the defendant with all the acts within the statutory definition substantially in the words of the statute without further expression.

1 Bish. Crim. Proc., sec. 611; People v. Marselier, 11 Pac. 503; Territory v. Christman, 9 N. M. 587; Wilburn v. Territory, 62 Pac. 969.

Where receiving stolen goods is prosecuted as a substantive offense the indictment need not charge the name of the thief, or of the person from whom the property was received, nor need it be alleged that the name is unknown to the grand jury.

Com. v. State et al., 11 Gray (Mass.) 63; People v. Ribolsi, 89 Cal. 496; State v. Feuerhaken, 96 Iowa 302; Shriedley v. State, 23 Ohio St. 139; State v. Smith, 37 Mo. 58-63; Swaggerty v. State, 9 Yerg. (Tenn.) 339; People v. Caswell, 21 Wend. (N. Y.) 87; Com. v. Hogan, 121 Mass. 373; Anderson et al. v. State, 38 Fla. 3-5.

While our statute makes brands and earmarks receivable in evidence it does not make them exclusive, and any other testimony tending to show the identity of the animals is admissible under the general rules of evidence.

Comp. Laws 1897, secs. 64, 66; Chavez v. Territory, 6 N. M. 457, 459.

It would be manifest invasion of every principle of fair dealing to allow counsel to cross examine the witness as to facts which were not admissible in evidence and then preclude the other party from the right to examine him to the evidence so given.

1 Rice on Ev., p. 600, 601 and 279; 1 Green-

leaf on Ev., sec. 468; Railroad v. Doughty, 22 N. J. L. 495, 500; Phillips on Ev., 912; Schlencker v. State, 9 Neb. 249.

It is not error to exclude from evidence a bill of sale that is neither witnessed nor acknowledged.

Secs. 75 to 80 and 166, Compiled Laws 1897; secs. 64 to 70 inclusive, Compiled Laws 1884.

Concerning the selection and empanelling of the jury see Territory v. Barrett 8 N. M. 77.

### STATEMENT OF THE CASE.

C. N. Wilkin, Levi Claypool and Esperidion Lueras were jointly indicted at the April, 1900, term of the district court of Socorro county. The indictment contains two counts.

The first count charges the defendants with stealing two hundred and twenty-five head of sheep from Vidal Mora, on the eleventh day of February, 1899, and the second count charges the defendants with having bought these same sheep, on the same day, knowing them to have been stolen. Defendant Wilkin was never arraigned or tried, not having been arrested.

To the indictment the defendants Claypool and Lueras demurred, which demurrer was overruled, exceptions being saved, plea of not guilty was entered and the cause was tried at the May, 1901, term of the district court, and the jury returned a verdict against Lueras of guilty on the first count and against Claypool of guilty on the second count. Motion for a new trial was made, containing sixteen alleged grounds of error, which was overruled, exceptions being reserved; motion in arrest of judgment was then filed, which was also overruled, and the defendants were sentenced to the penitentiary for the term of five years each and to pay a fine of $100.

Appeal was prayed and allowed, and the case was brought to this court for review.

OPINION OF THE COURT.

MILLS, C. J.—On the motion for a new trial filed in this case sixteen alleged grounds of error are assigned, but on the hearing before us only four are insisted on, to-wit: (1) The excluding by the court of a so-called bill of sale, executed by the defendant Esperidion Lueras and delivered to the defendant Levi Claypool at the time the sheep were turned over to him; (2) the denial by the court of the right to cross-examine the witness Chas. R. Huber, as to an alleged confession or admission of the defendant Esperidion Lueras; (3) the giving by the court to the jury of instructions relating to conspiracy, when no conspiracy was shown by the evidence, and (4) on the ground of newly-discovered evidence.

We will also consider the demurrer and the motion in arrest of judgment, as exceptions were saved to their overruling, but as the grounds in both the demurrer and the motion in arrest of judgment are the same, we will consider them as one. Three grounds are set out in each. The first two are to the indictment as a whole, and the third is as to the second count. The grounds to the indictment as a whole are: (1) Because the said indictment does not describe the court wherein the same was found, and (2) because the said indictment does not state at what place the court was sitting, when the indictment was found. The ground to the second count is; because the said second count of the indictment does not give the name of the person or persons from whom the defendants are charged with having unlawfully purchased the said property, or give any reasons for not alleging said names.

That part of the indictment which it is necessary for us to consider in passing on the grounds of demurrer and in arrest of judgment to the indictment as a whole, reads as follows:

"Territory of New Mexico, county of Socorro, ss.

"In the district court at the April term, A. D., 1900.

"The grand jurors of the Territory of New Mexico,. taken from the body of the good and lawful men of Socorro county, in the Territory of New Mexico, duly selected, empanelled, sworn and charged at the April term, A. D., 1900, to inquire into and due presentment make of all offenses against the laws of the Territory of New Mexico, committed within said county of Socorro, upon their oaths do present:"

There is nothing in the first two grounds because the indictment, as just set out does describe the court wherein it was found; it distinctly says, "In the district court" and it also describes the county where the court was sitting as "Socorro county." We know of no law which requires the name of the town where the district court was held to be set out in the indictment. The formal part of this indictment, which is set out above, contains all of the averments which indictments usually contain in this Territory, and in fact contains somewhat more than the printed forms employed in some of the judicial districts of this Territory.

The objection to the second count of the indictment presents a more serious question than that just disposed of. That part of the second count of the indictment which is pertinent charges that the defendants "did unlawfully, feloniously and knowingly purchase two hundred and twenty-five sheep . . . each of the value of three dollars, from a person or persons not having the lawful right to sell and dispose of the same, the said C. N. Wilkin, Levi Claypool and Esperidion Lueras then and there well knowing said property to have been stolen at the time they so purchased the same, contrary to the form of the statute in such case made and provided, and against the peace and dignity of the Territory of New Mexico."

The indictment under consideration is brought on section 79, of the Compiled Laws of 1897, which relates to the stealing or purchasing of stolen cattle, horses, sheep, etc. The last part of this statute which deals.

with the purchasing of stolen live stock, reads: "Or any person who shall knowingly purchase from anyone not having the lawful right to sell and dispose of the same, any neat cattle, horse, mule, sheep, swine, or ass, shall be deemed guilty of a felony, etc."

The learned solicitor-general contends in his briefs, that this part of the law was passed to avoid the necessity of setting out and proving on the trial, the true owner of the stolen live stock, and while this point is not raised in either the demurrer or the motion in arrest of judgment, we do not think that this statute bears the construction which he seeks to place on it.

Doubtless the rule which universally prevails requiring that the name of the owner of the property be set out, if known, in indictments of this kind arises from the fact that such indictment will inform the defendant of just what he stands charged, and will also enable him to plead former jeopardy, if such a plea is proper.

As to whether or not the indictment should state from whom the stolen property was received, or that such name was unknown to the jurors, is a proposition upon which the authorities disagree. This question has never been decided in the courts of this Territory, and is still an open one.

Mr. Bishop says in his work on criminal procedure, vol. 2, section 983: "Commonly, in England and in numbers of our States, the indictment does not aver from whom the stolen goods were received. Some of our American cases require it. This question belongs to a class upon which there may not unreasonably be differences of opinion, and perhaps it may properly be influenced by the terms of the statute." A considerable number of cases are cited in favor of both propositions but the weight of authority seems to be that the indictment need not set out from whom the stolen goods were received. Our statutes, section 79, Laws of 1897, do not make the receiving of stolen goods larceny, it makes it a felony.

If the statute made it larceny then it properly might be claimed that the indictment should contain the name of the party from whom the stolen property was received by the purchaser.

A still more serious objection might have been raised to the second count of this indictment, but as it was not done, and as the attention of the court was not called to it, and as no ruling was made on it, we will not consider it.

We can see no error in the court having overruled both the demurrer and the motion in arrest of judgment filed in this cause.

We will next consider the errors alleged to have occurred on the trial, or at least such of them as are necessary to determine this case.

We will first consider the action of the court in excluding the so-called bill of sale, when it was offered in evidence.

The statutes of this Territory, section 166, Compiled Laws of 1897, require that no person shall sell or dispose of any sheep or purchase or receive any sheep without giving and receiving a bill of sale in writing, as provided in section 75, Compiled Laws of 1897, and sections subsequent thereto. Section 75, requires that a party selling shall give to the party buying a bill of sale in writing of the stock so sold, which shall be witnessed by two witnesses residents of the county where such sale is made. Failure to comply with this requirement is made a misdemeanor.

When this bill of sale was offered in evidence, the district attorney objected to its introduction, because there had been no foundation laid. The court then said, "I think the foundation is sufficient, but it will be excluded on the ground that it is not properly executed and does not come within the provision of the statute. It is not such a bill of sale as the law contemplates." Defendants excepted.

Counsel for defendants contend that this bill of sale

should have been admitted in evidence, first, upon the grounds of explaining the intent of the defendants, and second, upon the ground that the sale of the sheep was not such a sale as is required by the statute to be evidenced by a bill of sale.

The mere fact of the possession of the stolen goods is not sufficient proof that the party knowingly received or purchased the same, knowing them to have been stolen. There must be other proof of knowledge. "Possession of the goods may, as in larceny, and under the like rules and with the like effect, be evidence against the receiver. But the proper accompanying proofs must appear or it will amount to nothing." 2 Bishop Criminal Procedure, sec. 989. The guilty knowledge is the very gist of the offense. George v. State, 78 N. W. (Neb.) 259.

In Texas where the statute relating to bills of sale, which are unacknowledged and unrecorded, is certainly as strong if not stronger than ours, bills of sale which do not comply with the statutory requirements are admitted in evidence as being part of the res gestae. The court said, "other objections made to this bill of sale as evidence are not in our opinion tenable. An unacknowledged, unrecorded bill of sale of property while it might not under the law vest the legal title in the vendee, would be evidence in a prosecution for theft of such property, to prove such ownership in said property, as the law in such case recognized as sufficient." Morrow v. State, 22 Texas App. 249; Williams v. State, 30 Texas App. 155; Buchanan v. State, 26 Texas App. 54. This certainly appears to be the humane rule and in our opinion is in consonance with the spirit of our laws. In a civil suit between Claypool and Lueras for the possession of the sheep this bill of sale would have been admissible, to sustain the claim of Claypool that he had bought the sheep, even though it was not witnessed ac-

cording to law, and if it would be admissible in a civil suit, it must be so in a criminal one.

This court has recently held in a civil case that it was not error to receive in evidence a bill of sale which was not acknowledged according to law, saying among other things:

"Counsel for appellants assign for error the action of the court below in receiving in evidence the bills of sale and receipts referred to in the statement of facts, upon the ground that the bills of sale were not acknowledged as required by law. The position of counsel for the appellant is stated by him in his brief in the following language: 'Defendant claims that he became the owner of the sheep by purchase; hence the only way by which he could have shown himself to be the owner of said sheep was by a written bill of sale in his favor, as required by the statutes of the Territory of New Mexico.' This contention is not sound. It is true, the giving and receiving of bills of sale by vendors and purchasers of animals had been provided for in section 75, Compiled Laws 1897, and made applicable to sheep by section 166 of Compiled Laws of 1897; but these provisions of law are not applicable to all cases, and in our opinion, they are not applicable to the case now under consideration. Section 75, as shown by its specific subdivisions, is intended to be applied to animals running on open and uninclosed ranges; to stock being sold for shipment or slaughter, or to be driven or shipped to market or distant ranges; but it does not apply to the sale of animals by the actual owner, where the animals are under his own supervision or control. This is indicated by the proviso in that section which is as follows: 'But this provision shall not apply to sales of stock when the persons who sell, are selling stock of which they have had actual and personal control and supervision daily for the said period of sixty days next prior to the sale thereof, and are rightfully entitled either as principal or agent to sell and dispose of the same.' If the position

contended for by counsel for appellants was correct, it would be necessary to give and receive bills of sale in case of the sale or purchase of domestic animals by or from the true owner thereof, and, in our opinion the statute did not contemplate this." Gale v. Salas, 66 Pac. 521.

It being the law in this Territory that in a civil case a bill of sale which is not properly acknowledged, may be received in evidence, there is much stronger reason for its acceptance in those of a criminal nature, when the intent is the very gist of the crime. Whatever throws light upon the motive or intent of the accused should be admitted in evidence, unless it is clearly contrary to the well settled rules of law.

The Legislature of this Territory passed an act in 1899, chapter 33, which has changed the requirements regarding the giving of bills of sale when sheep are sold, but as this law was passed, subsequent to the transfer of the sheep in controversy in this case, it is not pertinent, and need not be considered by us.

We will next consider the claim of the defendants that they were denied the right to cross-examine the witness Charles R. Huber, as to an alleged confession or admission of the defendant Lueras. The entire cross-examination is set out in the record, and is as follows: "Q. As I understand you, you and he were in a friendly conversation, and you were joshing him? A. Yes, sir. Q. Did you take it as a serious confession of guilt? Objected to and objection sustained. Q. Do you know whether he was joshing, or confessing a crime? Objected to. Sustained. Defendants except. Q. You were deputy sheriff of Santa Fe county at that time? Yes, sir. Q. And had a warrant for a crime in that county? A. Yes, sir."

The question presented by this assignment is, Is it reversible error for the court to have sustained the objections which were made to the asking of the above questions and in not allowing them to be answered? It

is apparent that these questions called only for an expression of opinion on the part of the witness Huber, and did not call for facts on which the jury might base their verdict. Questions calling for the opinions of a witness, not testifying as an expert, are carefully scrutinized before they are admitted in evidence. Counsel for defendants might have pressed the inquiry further, so as to endeavor to have shown just the circumstances and conditions under which the alleged confession was made; they might have brought out all of the conversation leading up to it, or they might have shown that Lueras made the alleged confession while under the fear of bodily injury or that he was under the influence of liquor at the time, or that it was made in various ways which will readily suggest themselves to counsel learned in the law.

This, however, was not done, and counsel confined themselves solely to asking for the opinions of the witness. If counsel had chosen they might have asked questions which if not allowed by the court to be answered, would have given a substantial ground on which to allege error.

In addition to the fact that these questions only call for an opinion of the witness, the defendants suffered no injury which is apparent to us, by the ruling of the court in sustaining the objections. After all, whether or not the defendants suffered injury, is the main point to be determined in deciding whether or not the ruling of a trial court in regard to the admission or exclusion of evidence is reversible error.

This court has passed upon the cross-examination of witnesses in civil cases, and in the case of Orange County Fruit Exchange v. Hubbell, 61 Pac. 121, we held that the limitation of cross-examination is a matter which rests in the sound discretion of the court, and unless there is manifest abuse of such discretion an appellate court will not reverse the ruling of the trial court. We still believe this to be the law, and in this

opinion we expressly disclaim any intention to deny or curtail the right of opposing counsel to subject a witness to a proper cross-examination on matters which may have been brought out on the direct examination. Orange County Fruit Exchange v. Hubbell, supra, does not conflict with this rule for it only goes so far as to hold that the trial court has the right in the exercise of a sound judicial discretion to limit cross-examination, a right which is often needed and which is sometimes exercised by the court, as a matter of self-protection, when the cross-examination becomes, as is often the case exceedingly lengthy and prolix.

We think that the court committed no error in sustaining the objections to the questions asked witness Huber, and in not allowing them to be answered.

The next error alleged is that the court erred in charging the jury as to conspiracy, counsel for defendants claiming that there is no evidence in the case to warrant such instruction. The learned judge below instructed the jury as to conspiracy as follows: "The court instructs you that if two or more persons agree to commit a felony, and to unite their efforts to the accomplishment and consummation of such felony, then the act of each of said persons would be the act of all engaged in the common enterprise; and if you believe, from the evidence before you, beyond a reasonable doubt that the defendants Levi Claypool and Esperidion Lueras had united in a common enterprise to knowingly, unlawfully and feloniously steal, take and drive away and deprive the owner, Vidal Mora, of two hundred and twenty-five sheep, of the value of three dollars each, on or about the eleventh day of February, 1899, as charged in the indictment, or if you believe from the evidence before you, beyond a reasonable doubt, that the said defendants Levi Claypool and Esperidion Lueras between themselves or between themselves and another, had united in a common enterprise, and did unlawfully, feloniously and knowingly purchase two

hundred and twenty-five sheep, of the value of three dollars each, earmarked as set forth in the indictment, from a person or persons not having the lawful right to sell or dispose of the same, they then and there well knowing the said property to have been stolen at the time they purchased the same, and if you should believe from the evidence before you, beyond a reasonable doubt, that between the said Levi Claypool and Esperidion Lueras there was a joint enterprise and common purpose to knowingly, unlawfully and feloniously effect the stealing, taking and driving away of said two hundred and twenty-five sheep and deprive the owner of the immediate possession thereof, or that there was a joint and common purpose between the said Levi Claypool and Esperidion Lueras to purchase said sheep from some person or persons not having the lawful right to dispose of the same, and that they well knew the said property to have been stolen at the time of said purchase, then such stealing, taking and driving, or such purchase by either of said defendants, was the act of both of said defendants and each is liable for the acts of the other the same as if he alone was the sole perpetrator."

It is a rule of criminal law that if a trial judge inserts in his instructions in charging a jury, an instruction as to conspiracy, when there is no evidence before the jury to warrant it, it is reversible error. Crane v. State, 111 Ala. 45; Spencer v. State, 77 Ga. 155. If this then is the law, and we think that there can be no doubt of it, we must examine the record and see if the evidence discloses such a state of facts as shows a conspiracy, for if it does then the instruction is a proper one, otherwise not.

We have read every word of the evidence with the greatest care. The indictment is against three parties, one of whom is not on trial. The testimony given by the Territory is in substance that five hundred and twenty-five ewes were missed from the herd of Mora and Pino on the eleventh day of February, 1899; that one of

the herders, Dario Mora who had charge of the flock, trailed the sheep which were lost for about one mile on the same afternoon. That on the next day he resumed the trail and went to the camp of Enrique Savedra about another mile; that at the camp were Savedra and the defendant Lueras, who were asked by Mora if they had seen the sheep he was looking after, and they replied no. Mora further testified that he had trailed the sheep to within about one hundred yards of Savedra's camp. Lueras soon left, and after a short time Mora started for his camp, and on the way back found a bunch of seventy-three sheep which he put back in his herd. On the morning of the thirteenth he went to where he had found the seventy-three sheep and followed the trail back to where it came from. Witness further testified that he saw tracks of horses and of two men, one of whom had on moccasins, and who wore trousers that were so long that they left marks in the sand; that he followed up the back tracks until he came to a big hole, about two miles from his camp, where the herd had been corralled; that he found that a herd had been cut at this hole and he followed the tracks for about half a mile when he returned to his camp. That on the fourteenth he went to the camp of Savedra and asked Savedra to help him follow the tracks to the north. That he returned to his camp for the night and on the morning of the fifteenth, he went again to Savedra's camp and borrowed a horse so that he might notify the owner of the sheep of his loss. That he rode about two miles, when the horse playing out, he returned once more to his camp, and that on the sixteenth he sent a boy he had at the camp with him to notify Vidal Mora, the owner of a part of the sheep, of the loss. That on the morning of the twentieth Vidal Mora arrived, and that on the morning of the twenty-first they both went to where he had left the trail of the sheep and followed it to the Grand Quivera, about twelve miles, to the ranch of Wilkin and Claypool. That they slept there that night and on the

twenty-second tried to find the trail but did not succeed, nor did they on the twenty-third. That on the twenty-fourth they again looked for the trail towards the west and found it about two miles from the Grand Quivera. That they went on the back trail and trailed it to near to Wilkin's house. · That there were drops of blood on the sand. That on the twenty-fifth they again followed the trail for about three miles and also followed it on the twenty-sixth to a place called Montezuma, about eight miles from the Grand Quivera. That from information received there they went about ten miles to the herd of Jose Sanchez, where they recognized three sheep by flesh marks as having been with those that were lost. That Sanchez had in all about eight hundred sheep in his herd, and that about one hundred of these had fresh earmarks. That that night they slept with Jose Sanchez, and on the twenty-seventh returned to Grand Quivera, where they saw Wilkin, and Claypool, and after some conversation asked them to give up the sheep which were in the Sanchez herd, which they said they would not do without an order, saying that Lueras had sold them to them, and that they did not wish to lose the money they had paid him for them, and that Vidal Mora then said he would replevin the sheep, which he afterwards did. It is also in evidence that Lueras was running a considerable flock of sheep which he actually owned.

We are unable to see in this sufficient evidence on which to base the instruction as to conspiracy. A conspiracy is defined to be "a confederating of two or more persons to accomplish some unlawful purpose, or a lawful purpose by some unlawful means." 2 Bishop's New Criminal Law, sec. 175. In the entire record before us there is not a scintilla of evidence that Wilkin or Claypool or either of them confederated or entered into any agreement with Lueras, or aided, assisted or abetted him in stealing the sheep he afterwards sold to them, if he did so steal them. Even if the evidence shows that Lueras stole the sheep and sold them to Wilkin and

Claypool, they knowing they were stolen when they bought them, that would not be proof of any conspiracy.

We think that error was committed in giving this instruction as to conspiracy, as the entire evidence fails to show a conspiracy.

We will now consider the action of the court in refusing to grant a new trial on the ground of newly discovered evidence. In this refusal we think that the court did perfectly right, and that its action was in line with the well-established rules of law. The rule of law is that a new trial will not be granted on a mere showing that new evidence has been discovered. Newly-discovered evidence, in order to be sufficient, must fulfill all the following requirements, to-wit: (1) It must be such as will probably change the result if a new trial is granted; (2) it must have been discovered since the trial; (3) it must be such as could not have been discovered before the trial by the exercise of due diligence; (4) it must be material to the issue; (5) it must not be merely cumulative to the former evidence; (6) it must not be merely impeaching or contradicting the former evidence.

These propositions were first laid down in Berry v. State, 10 Ga. 511, and have since been followed by the Supreme Court of the United States, and by nearly all of the State courts, as will appear from an examination of the authorities which are collated in 14 Ency. P. and P., pages 791-792.

The sixteenth ground in the motion for a new trial filed in this case discloses that after the evidence was concluded and the arguments finished except "the closing argument of the district attorney, the said defendants and their attorneys for the first time learned of the existence of evidence strongly tending to show that these defendants were and are innocent of the charge against them in this cause, and the purport and effect of said newly-discovered evidence, is that at the very time, or immediately thereabouts, of the disappearance of the

sheep alleged in this indictment to have been stolen from said Vidal Mora, one of the herders of Vidal Mora, in charge of said sheep at that time, disappeared and has not since been heard of in this county. Defendants further say that this newly-discovered evidence is now accessible, and if a new trial is granted the said evidence will be produced upon such new trial in the behalf of the defendants."

The affidavit in support of this motion is signed by H. B. Fergusson, one of the attorneys for the defendants and by the defendants themselves, and is almost a copy of the motion for the new trial above set out, except that it alleges that the newly-discovered evidence is not cumulative.

The motion and affidavit filed in support thereof, does not comply with several of the requirements above set out as being necessary for motions for new trials. Even if on a new trial it was proved that one of the herders who had charge of the sheep, "disappeared at or about the same time that the alleged stolen sheep were missed from said herd," it would probably not change the result of the trial, and the invariable rule is that the newly-discovered evidence must be of such a character, that it will probably change the result if a new trial is granted. Ruhe v. Abreu, 1 N. M. 247; Faulkner v. Territory, 6 N. M. 488; U. S. v. Biena, 8 N. M. 99, and authorities from the Supreme Court of the United States and from thirty-four States and Territories which are cited in 14 Ency. P. and P. 793-794.

The new evidence was not discovered after the trial had ended, as is shown by the motion and affidavit. It is admitted that the evidence was known to the defendants and their attorneys before the district attorney made his final address to the jury, and if the evidence is discovered before the close of the trial, even after argument, but before submission to the jury, it will not be considered as newly-discovered evidence, since the applicant might have informed the court and offered such

testimony at that time, or if the witnesses were not at hand could have obtained a continuance. 14 Ency. P. and P. 796.

The motion and affidavit do not show that due diligence was used before the trial by the affiant to secure the evidence on which the new trial is now sought. This is a necessary requisite, and the authorities are uniform in holding that a new trial will not be granted on the grounds of newly-discovered evidence, which could have been discovered before trial by the exercise of reasonable diligence. 14 Ency. P. and P. 799.

The new evidence must be material to the issue, and not merely relating to collateral matters, and the motions or affidavits filed in support thereof should set out what the evidence is on which the new trial is sought, so that the court can determine whether or not it is material to the issues, and if it would probably change the result of the trial if it was introduced in evidence.

In addition to the affidavit of the applicants for a new trial and their attorneys, the newly-discovered evidence must be established by the affidavits of the new witnesses, setting forth the facts to which they will testify, or a satisfactory excuse must be given for not obtaining such affidavits. In the absence of such explanation, the mere ex-parte affidavit of the applicants, setting forth the newly-discovered evidence and stating the facts to which the new witnesses will testify, is not sufficient. 14 Ency. P. and P. 826-827.

The motion and affidavits filed in this cause in support thereof do not comply with the well-established legal rules, consequently the court should have overruled it, as it properly did. To grant new trials on the ground of newly-discovered evidence, on such vague allegations as are contained in the motion and affidavits filed in this cause, would pervert justice, and trials would practically have no end. There is no error in this assignment.

In deciding this case we have deemed it proper to

consider all of the grounds of error on which the defense have relied so that when a new trial is had they may be avoided. To consider them all this opinion has been drawn out to a very considerable extent, but we deem it best to even go to the length we have done, rather than to leave questions open which might possibly be presented to us again in the event of another trial, conviction and appeal.

There was error however in the trial of this case as pointed out in the divisions of this opinion numbered 2 and 4, and accordingly the case is reversed and remanded to the district court of the Fifth judicial district, sitting within and for the county of Socorro, for further proceedings in accordance with this opinion. And it is so ordered.

Parker, Baker and McFie, JJ., concur.

McMillan, A. J., having tried this cause below did not participate in this opinion.