696 P.2d 471
**STATE of New Mexico,**
**Plaintiff-Appellee,**

v.

**Johnny VOLPATO,**
**Defendant-Appellant.**

**No. 15306.**

Supreme Court of New Mexico.

Feb. 18, 1985.

Rehearing Denied March 6, 1985.

Leon Taylor, Daniel Rakes, Albuquerque, for defendant-appellant.

Paul Bardacke, Atty. Gen., Anthony Tupler, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

## OPINION

SOSA, Senior Justice.

Johnny Volpato was convicted of the first degree murder of his wife. His conviction was affirmed by this Court in an unpublished decision. *State v. Volpato,* S.Ct. No. 13,978 (Filed June 30, 1982). Volpato subsequently initiated a motion for a new trial pursuant to NMSA 1978, Crim.P. Rule 45 (Repl.Pamp.1980). Volpato appeals the district court denial of this motion. The sole issue is whether a new trial should have been granted on the basis of newly-discovered evidence.

Elaine Volpato was shot and killed during the late evening hours of February 5, 1980 in downtown Carlsbad. During his trial for her murder, Volpato maintained the shootings occurred during a robbery carried out by two Hispanic males at his drugstore business.

Briefly, Volpato's testimony was to the effect that he and his wife were at the drugstore at approximately 11:30 p.m. to fill an emergency prescription phoned in

shortly before at their home. Volpato testified that moments after arriving at the store, he let in an Hispanic male who identified himself as the previous caller. After this individual pulled a gun, demanded methadone and forced Volpato over to open a safe, Volpato's wife came from the rear of the store and screamed. According to Volpato's testimony, this surprised the gunman who immediately chased her towards the back of the store. At this time Volpato said he saw a second Hispanic individual walking up an aisle. Volpato testified he was attempting to phone to police as the first individual shot his wife. This individual quickly returned and shot Volpato as he was attempting to escape. Volpato said he then heard an individual at the open safe rummaging through drug bottles stored inside and placing them into a cardboard box. After both men left, Volpato went to check on his wife and wandered briefly through the store before calling the police. When police arrived they found Mrs. Volpato dead and Johnny Volpato bleeding profusely.

The prosecution maintained that Volpato shot his wife and then himself as part of his plan to feign a robbery to conceal his involvement in the murder. The evidence against Volpato was entirely circumstantial since there were no eyewitnesses to the shootings. Although the murder weapon was never found, the State produced evidence which indicated that Volpato did the shooting. A portion of this evidence indicated that the bullets fired were of three distinct types and matched the types of bullets subsequently found in Volpato's home. Ballistics evidence also supported the State's contention that Volpato shot himself. In addition, the prosecution maintained that after the shootings, Volpato concealed the gun underneath a plank behind the safe and later disposed of the weapon. It produced some evidence that Volpato had stopped briefly by the safe after he had been shot as well as evidence indicating the area behind the safe may have been disturbed.

The primary basis for Volpato's motion for a new trial was evidence presented by Mrs. Delores Looney consisting of her observations the night of the homicide. At the motion hearing she testified that at approximately 11:30 p.m., she and her husband were driving home from a department store. Their route home brought them into the immediate vicinity of the drugstore. She indicated that she and her husband drove up to the store because she thought she had seen her son standing nearby. The drugstore was located at an intersection controlled by traffic lights. As they approached the store, she observed two vehicles parked in front, one a blue Pontiac and the second a small blue sports car matching the description of Volpato's vehicle.

As the passenger in her own vehicle, Looney observed two Hispanic males from a distance of between five and eight feet. She related detailed physical descriptions of these men and their activities. One individual was leaning into the small blue car through an open window and appeared to be taking out a small object. When he made eye contact with Mrs. Looney, he moved between the cars and squatted down. The second individual stepped off the curb and began kicking a tire on the Pontiac. Having made these observations, Mrs. Looney and her husband stopped at a red traffic light on the corner. After waiting there briefly, negotiating a turn, and beginning to proceed down another city street, Mrs. Looney heard a quick series of four "gunshots" or "backfires" followed a short time later by two more reports.

■ A motion for a new trial in New Mexico on the basis of newly-discovered evidence is governed by the rule established in *Territory v. Claypool and Lueras*, 11 N.M. 568, 71 P. 463 (1903). Such a motion will not be granted unless the newly-discovered evidence is such that it fulfills all of the following requirements: 1) it will probably change the result if a new trial is granted; 2) it must have been discovered since the trial; 3) it could not have been discovered before the trial by the exercise of due diligence; 4) it must be material; 5) it must not be merely cumulative; and 6) it

must not be merely impeaching or contradictory. Recent cases have consistently applied this standard. *State v. Stephens*, 99 N.M. 32, 653 P.2d 863 (1982); *State v. Fuentes*, 67 N.M. 31, 351 P.2d 209 (1960). The discretion of a trial court is not to be lightly interfered with, and an order denying a motion for a new trial will not be overturned except for an abuse of discretion. *State v. Fuentes.*

■ The trial court denied Volpato's motion solely on the basis that the evidence presented was merely contradictory of other evidence and the bulk of testimony at trial. The court further ruled that the evidence was known "at least in broad outline" to counsel before trial but was not used as a matter of strategic choice. We consider whether each of these factors was a proper basis for the court's ruling, turning first to the question whether the evidence presented by Mrs. Looney at the hearing was such that it was merely contradictory.

Although Volpato testified at length regarding the robbery and shootings perpetrated by two Hispanic males, the defense produced no witnesses corroborating his account. Volpato's story stood in stark contrast to the State's evidence which tended to indicate that Mrs. Volpato was shot with his pistol. While it is certainly true that Mrs. Looney's testimony was contradictory of the State's evidence, her testimony regarding events occurring outside the store also corroborates Volpato's account of events inside the store.

Mrs. Looney's testimony placed two Hispanic males at the scene of the crime and is the only evidence which directly supports Volpato's claim that these two men entered his store. Moreover, her testimony indicates how one of the robbers could have obtained Volpato's gun prior to the shooting. She saw one individual reach into Volpato's car and pull out a small object. Volpato's trial testimony indicated that he was not sure where his pistol was the night of the homicide. He indicated it may have been at his home but that the last place he remembered seeing it was in the console

between the seats of his car. He also testified that his car was unlocked. Lastly, Mrs. Looney remembered hearing four gunshots followed by two more in a sequence which was similar to Volpato's own account of the shootings. Volpato testified that one robber chased his wife toward the rear of the store and shot her four times, then returned and shot him twice.

Citing numerous aspects of Mrs. Looney's motion hearing testimony, the State maintains the district judge could easily discredit Mrs. Looney's testimony because her story was subject to considerable impeachment. This Court has addressed a similar challenge to the credibility of a witness testifying at a motion for new trial. In *State v. Fuentes*, the defendant's new trial motion was supported by an affidavit of a trial witness whose testimony directly established the defendant's participation in the crime. In the affidavit, the witness recanted his testimony, although his subsequent oral testimony at the motion hearing varied from his affidavit. There we stated, "[i]t is not a question of which story the judge himself believed to be true, but, rather, whether the defendant should have the right to have all of the testimony submitted to a jury in order that the jury might then determine his guilt or innocence." *Id.* at 32, 351 P.2d at 210. As in *Fuentes*, the State's argument in the instant case that Mrs. Looney's account was implausible and subject to impeachment is misplaced.

We conclude that the evidence in question was not merely contradictory and that the district court's denial of a new trial cannot be upheld on that basis.

■ We next consider whether the court's ruling should be sustained on the alternative ground that the evidence was known to defense and was thus discovered before trial. We first note that in *State v. Fuentes*, we concluded that all of the requirements for granting a new trial had been met, including the requirement that the evidence had been discovered after trial. As previously stated, the newly-discovered evidence in that case consisted of a change in the testimony of a key witness.

In the present case, prior to trial, three different members of the defense team spoke with Mrs. Looney. She consistently indicated she "could not remember" very much. She only said she "thought" she had been in the vicinity of the drugstore as she returned home from a club on an evening near the shooting. She was not at all sure of the date or time. She gave a vague account of two men she saw in front of the store but did not relate a description of their activities.

Mrs. Looney's motion hearing testimony also indicated that she did not contact the police or relate her full story to the defense team because she was scared. She feared her son, a former drug addict who had been paroled only three days before the homicide, might be implicated in the crime or harassed by the police. She was afraid of being harmed by possible suspects should she tell her story. She also simply did not want to become involved. Mrs. Looney stated her husband told her to "keep her mouth shut" on a number of occasions. During his own motion hearing testimony, Mr. Looney did not deny making these statements and stated that he, too, wanted to keep a low profile because of his son.

As a result of these combined factors, Mrs. Looney related her story to the defense team only in a very "roundabout way" and intentionally "left doubt" as to what she had seen and heard. She testified that after Volpato was found guilty she realized she should have spoken out. Eventually, as a matter of conscience, Mrs. Looney related her detailed story to Volpato's appellate counsel.

Volpato's trial counsel, Richard Blenden, testified at the motion hearing that he did not use Mrs. Looney as a witness because her story was far too vague, would not seem credible, and thus would hinder his attempts to be truthful with the jury. As examples, he cited that she could not remember the time she passed the drugstore or whether it was even the night of the homicide.

We are of the opinion that the decision not to use Mrs. Looney's testimony was dictated by her intentional evasiveness and lack of candor with the defense team. In spite of repeated contacts from the defense and efforts to firm-up her memory, she refused to acknowledge she had stopped in front of the drugstore only moments before the shootings and intentionally withheld several details of her story. The repercussions of this action went beyond simply rendering her full story functionally unavailable to the defense.

For example, Volpato's trial counsel testified that he was aware of two women other than Mrs. Looney who had been driving in the vicinity of the drugstore after the shootings. The driver had seen two men running from the drugstore area, one carrying a small white object. Shortly afterwards, she saw two Hispanic men in a Pontiac automobile. These men first attempted to use their car to block her own car in a cafe parking area, then sped away. Trial counsel testified he did not use these witnesses directly because their credibility was subject to question. Rather, at trial he attempted to reveal the outline of their account by cross-examination of police concerning information these women had submitted in police reports. Although we expressly do not consider this evidence as an independent basis for a new trial, it nonetheless bears noting that the absence of Mrs. Looney's own testimony had a direct bearing on the credibility of this additional evidence.

In *State v. Melendez*, 97 N.M. 740, 643 P.2d 609 (Ct.App.1981), *rev'd on other grounds*, 97 N.M. 738, 643 P.2d 607 (1982), the defendant had been convicted of voluntary manslaughter in the shooting death of a rival gang member. Newly-discovered evidence in that case consisted of a spent bullet recovered from the hood of defendant's car. Evidence regarding its angle of entry and rifling characteristics was consistent with its having been fired by a member of the victim's own gang. The court concluded that this evidence warranted a new trial because it complied with the standards for newly-discovered evidence, strengthened defendant's theory of self-de-

fense, and bore directly on the truthfulness of two important State witnesses. In the instant case, we find the newly-discovered evidence is not merely cumulative and was discovered after trial, the only two requirements which precluded a new trial according to the district court's ruling. As in *Melendez*, this evidence is important because it directly and independently corroborates Volpato's defense theory and bears directly on the credibility of other evidence in the case.

*State v. Stephens* and *State v. Mabry*, 96 N.M. 317, 630 P.2d 269 (1981), do not mandate denial of a new trial. In *Stephens*, the denial was premised in part on the mere cumulative nature of the additional evidence and the fact that it probably would not change the verdict at a new trial. Both *Stephens* and *Mabry* cited the failure to exercise due diligence in discovering evidence. These three factors did not form the basis for the district court's ruling in the instant case. As such, issues involving these points are not squarely presented and will not be addressed. Lastly, *Stephens* and *Mabry* emphasized the duty of an accused to reveal all information to counsel and to otherwise assist with his defense. In this case, there is no indication that Volpato's failure to actively exercise his duty to assist in his defense resulted in Mrs. Looney's failure to come forth with her complete story prior to trial.

The specific account of events related by Mrs. Looney at the motion hearing was not available to the defense, and was thus not discovered, until well after the trial. The district court's conclusion that her testimony was known to the defense in broad outline before trial was insufficient grounds for denying Volpato's motion.

Under the highly unusual facts of this case, we hold that the district court abused its discretion in denying a new trial. The judgment and order of the court are reversed and the cause remanded for a new trial.

IT IS SO ORDERED.

FEDERICI, C.J., and WALTERS, J., concur.