758 P.2d 783
**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**O.C. FERO, Defendant–Appellant.**

**No. 17301.**

Supreme Court of New Mexico.

July 29, 1988.

Jacquelyn Robins, Chief Public Defender, Sheila Lewis, Asst. Appellate Defender, Santa Fe, for defendant-appellant.

Hal Stratton, Atty. Gen., Gail MacQuesten, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

**OPINION**

STOWERS, Justice.

Defendant O.C. Fero was tried and convicted of murder in the first degree, contrary to NMSA 1978, Section 30–2–1(A)(1) (Repl.Pamp.1984), and sentenced to a term of life imprisonment.

The facts in this case are more fully set out in *State v. Fero*, 105 N.M. 339, 732 P.2d 866 (1987). Fero, who was then principal of Tohatchi High School, was evaluated on February 22, 1985, by Paul Hansen, Superintendent of Schools for the Gallup–McKinley school system. During the evaluation five shots were fired, which resulted in the death of Hansen. Fero was arrested for the homicide and gave a statement to the police.

At trial, there was no dispute that Fero killed Hansen. At issue was defendant's intent. The state argued that the murder was deliberate, while defendant claimed that he acted without intent during a brief psychotic episode. The state called as a witness Dr. John Smialeck, the medical examiner, who testified to the cause of death. Over defendant's objection, Dr. Smialeck opined that Fero fired four nonfatal shots mostly to the head region before firing the fifth and fatal shot to the back of Hansen's head. *Fero*, 105 N.M. at 344, 732 P.2d at 871. The first shot hit the victim in the mouth, the second in the cheek, the third in the arm as Hansen started to fall. Defend-

ant then walked around Hansen's prone body and fired two more shots from the feet area of the victim. The fifth shot was instantly fatal entering the back of the neck into the brainstem. The sixth shot remained unfired in the gun. During the investigation, the police removed pieces of carpet, the size of a "medium pizza", on which they had found the body. These pieces, however, were lost a few days before trial and found again after defendant's first motion for a new trial. Dr. Smialeck never saw the carpet pieces and did not refer to them in his testimony.

In *Fero*, we considered and rejected defendant's argument that the loss of the carpet deprived him of the opportunity for effective cross-examination. Applying the standard for lost evidence established in *State v. Chouinard*, 96 N.M. 658, 634 P.2d 680 (1981), *cert. denied*, 456 U.S. 930, 102 S.Ct. 1980, 72 L.Ed.2d 447 (1982), we stated that the determination of materiality and prejudice is discretionary with the trial court. And, since Fero failed to suggest how he might have used the carpet pieces and Dr. Smialeck spoke only of the wounds themselves without relying on the carpet, the trial court properly refused to suppress the testimony of Dr. Smialeck. *Fero*, 105 N.M. at 344–45, 732 P.2d at 871–72.

Thereafter, defendant moved for a new trial based upon an analysis of the lost carpet as newly discovered evidence. An evidentiary hearing on the motion was held. Defendant's expert testified that the carpet showed that defendant fired the fifth, fatal shot from a position in front of the victim's desk rather than from behind it as testified to by the state's medical examiner. Defendant claimed that by eliminating the steps he had to take to walk behind the desk to fire the last shots, this indicated he acted without the requisite intent needed for a conviction of first degree murder. The trial court denied defendant's motion and stated that although defendant satisfied the materiality prong, defendant failed to meet the five other requirements necessary to obtain a new trial. *See State v. Volpato*, 102 N.M. 383, 696 P.2d 471 (1985). Defendant appeals and we affirm the result reached by the trial court.

Defendant argues that the trial court abused its discretion in denying his motion for a new trial under *Chouinard*, the three-prong loss of evidence test, and also, under *Volpato*, the six-prong newly discovered evidence test. We disagree. Defendant's argument fails under either test.

### 1. *Loss of Evidence Test.*

■ New Mexico has adopted a three-part test to determine whether deprivation or loss of evidence constitutes reversible error. The test requires proof that: (1) The State either breached some duty or intentionally deprived the defendant of evidence; (2) the improperly suppressed evidence must have been material; and (3) the suppression of this evidence prejudiced the defendant. *Chouinard*, 96 N.M. at 661, 634 P.2d at 683; *State v. Duran*, 96 N.M. 364, 365, 630 P.2d 763, 764 (1981); *State v. Lovato*, 94 N.M. 780, 782, 617 P.2d 169, 171 (Ct.App.1980). The purpose of this test is "to assure the trial court will come to a determination that will serve the ends of justice." *Chouinard*, 96 N.M. at 661, 634 P.2d at 683. Defendant claims that the *Chouinard* "lost evidence test" is applicable here because defendant could not have argued at trial the prejudicial aspect, whether the murder was premeditated, without the presence of the carpet. And, further, since defendant did not know what this evidence would reveal, defendant now contends that he should be able to argue the three-part *Chouinard* test rather than the more stringent six-part *Volpato* test for a new trial. We will discuss each test.

Where the loss of the evidence is known prior to trial, as in the instant case, the remedy is either exclusion of all evidence which the lost evidence might have impeached, or admission with full disclosure of the loss and its relevance and import. The choice of these alternatives is made by the trial court, depending on its assessment of materiality and prejudice. *Id.* at 662, 634 P.2d at 684.

The value of this piece of carpet was to show the relative positions of the parties based on the location of the blood stains

under Hansen's body. The state photographed the carpet and provided this information to defendant. The carpet pieces, saturated with blood, were then placed in a boiler room to dry. Shortly before trial, both sides were informed that the carpet had been lost and would be unavailable to either side at trial. Defendant wanted to exclude from evidence Dr. Smialeck's testimony regarding the position of the victim's body on the floor when the last two shots had been fired. The trial court did not suppress the evidence because the medical examiner's testimony was based on the photographs and a medical examination of the victim's body, and not on the carpet. Since the state did not act in bad faith regarding the loss of the carpet, defendant must show that the evidence was material and prejudicial to satisfy the *Chouinard* test. *Id.* at 663, 634 P.2d at 685.

Whether evidence is material depends on "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *United States v. Bagley*, 473 U.S. 667, 682, 105 S.Ct. 3375, 3383, 87 L.Ed.2d 481 (1985); *see also Duran*, 96 N.M. at 365, 630 P.2d at 764 (the evidence must be material to the guilt or punishment of the defendant). Defendant argues that based on the location of the bullet hole in the carpet, he could have proved at trial that he killed the victim without premeditation. The location would show that defendant fired the last two shots from a position in front of the desk, which would contradict the state's evidence that defendant walked around the desk before firing those two shots. Defendant maintains the new information makes it more likely that he acted while in a psychotic state, rather than with the intent to kill. We disagree that the carpet hole bolsters defendant's argument or that defendant could not have presented this argument effectively without the physical evidence in hand. As already noted, defendant had access to photographs of the carpet showing the blood stains under Hansen's body. Moreover, defendant fired

three shots directly at the victim's head before Hansen fell over. Although none of these three shots would have been instantly fatal, the wounds were serious and potentially mortal. After a pause, defendant fired two additional shots to the victim's head region. Whether at that time, defendant stood in front of or behind the desk, he nevertheless took the time to reaim and fire. The fourth shot grazed the victim's neck and skull. The fifth, and immediately fatal shot, passed through the brainstem. Defendant stopped firing at that point even though he knew the chamber contained a sixth, live round. This evidence is consistent only with a theory that defendant fired with the intent to kill and not in a "robot-like fashion." The result of the trial would not have been different if defendant had had the carpet in his possession.

Finally, the loss of the carpet did not prejudice defendant. Even if, for argument's sake, we were to say that the undisclosed item was material, there is no reversible error unless defendant has been prejudiced. Any prejudice is weighed by the trial court on a case by case basis and balanced against the other evidence offered at trial, during cross-examination, and defendant's use of the loss in presenting the defense. *State v. Gillette*, 102 N.M. 695, 700, 699 P.2d 626, 631 (Ct.App.1985). The record indicates that defendant had announced his intention to kill the victim prior to the evaluation, he took a gun with him to the evaluation session, he fired three shots at point-blank range at Hansen's head, and then reaimed and fired two more shots at Hansen's head. After the shooting, defendant told a secretary to call the police and, subsequently, told the assistant superintendent what he had done and why he did it. In light of the evidence presented, which is consistent with a theory of premeditated murder, we are unable to conclude that the loss of the evidence prejudiced defendant's case.

### 2. *Motion for a New Trial.*

A motion for a new trial filed under SCRA 1986, 5–614 on the basis of newly discovered evidence must meet six require-

ments: (1) It will probably change the result if a new trial is granted; (2) it must have been discovered since the trial; (3) it could not have been discovered before the trial by the exercise of due diligence; (4) it must be material; (5) it must not be merely cumulative; and (6) it must not be merely impeaching or contradictory. *Volpato*, 102 N.M. at 384–85, 696 P.2d at 472–73. We will not disturb on appeal the trial court's denial of a motion for a new trial unless the ruling is arbitrary, capricious or beyond reason. *State v. Smith*, 92 N.M. 533, 538, 591 P.2d 664, 669 (1979).

Defendant does not meet these six criteria for newly discovered evidence. We have already stated in our discussion of the lost evidence test that the carpet is not material evidence and that it would not change the result if a new trial was granted. Whether new evidence would probably change the result is a factor peculiarly addressed to the sound discretion of the trial court. *State v. Shirley*, 103 N.M. 731, 733, 713 P.2d 1, 3 (Ct.App.1985), *cert. denied*, 103 N.M. 740, 713 P.2d 556 (1986). The trial court correctly determined it would not do so. We do not agree that the carpet is even newly discovered evidence. It was available to defendant before the trial. Defendant knew of the carpet's existence after he had been informed of it by an officer. Defendant, however, showed no interest in seeing it at that time even though he had the photographs of the blood stains on the carpet in his possession. When the state indicated it might introduce the carpet as evidence at trial, defendant asked to view it. It was then that the state learned the evidence had been lost. Defendant again became interested in the carpet pieces after Dr. Smialeck testified about the position of the victim's body. Dr. Smialeck, however, in formulating his opinion, never relied on the carpet pieces themselves. Defendant did not cross-examine the witness about the missing evidence nor did defendant present his theories of the carpet's significance. Defendant now wants to use this evidence to contradict the medical examiner's opinion about where defendant stood when he fired the last two shots at Hansen's head. The

doctor's testimony on this point was not essential to the state's' case in view of the overwhelming evidence presented from which a jury could conclude that the killing was deliberate. Since the evidence of the carpet does not satisfy the requirements for a new trial motion, the district court properly denied defendant's motion.

Moreover, defendant's reliance on *Volpato* is misplaced. In *Volpato*, a key witness to the homicide related her story to defendant prior to trial in a very vague, roundabout fashion and intentionally left doubt as to what she had seen and heard. She refused to acknowledge she had stopped in front of the drugstore only moments before the shootings and intentionally withheld several important details of her story. This rendered her full story functionally unavailable to defendant. Not until after Volpato had been found guilty did she realize she should have related her detailed story to defendant. *Volpato*, 102 N.M. at 386, 696 P.2d at 474. The basis for the new trial motion was the evidence presented by this key witness of her observations on the night of the homicide. *Id.* at 384, 696 P.2d at 472. The evidence was extremely important because it directly and independently corroborated Volpato's defense theory and bore directly on the credibility of other evidence in the case to show that Volpato did not shoot his wife, but she was shot during a robbery by two men at his drugstore. *Id.* at 387, 696 P.2d at 475. The specific account of these events was never available to the defense until after the trial. We held that under the highly unusual facts of this case, Volpato was entitled to a new trial. *Id.*

The nature of the facts in this case are not of the highly unusual character present in *Volpato*. The pieces of carpet were available to defendant before the trial. Also, this evidence does not independently and directly corroborate defendant's claim that the position of the bullet in the carpet negates intent. Whether defendant stood in front of or behind the desk, the fact remains that he reaimed and fired the additional two shots into the head region of Hansen after he paused. Either with or

without the carpet as physical evidence, the record supports a theory that defendant intentionally killed Hansen with deliberation and did not act while in a psychotic state.

The trial court's order denying the new trial motion is affirmed.

IT IS SO ORDERED.

SCARBOROUGH, C.J., and WALTERS, J., concur.