This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

**Filing Date: May 18, 2026**

**No. S-1-SC-40801**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**LALO ANTHONY CASTRILLO, IV,**
**a/ka/ ANTHONY LALO CASTRILLO,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF DOÑA ANA COUNTY**
**James Waylon Counts, District Judge**

Aarons Law PC
Stephen D. Aarons
Hugh W. Dangler
Santa Fe, NM

for Appellant

Raúl Torrez, Attorney General
Benjamin L. Lammons, Assistant Solicitor General
Santa Fe, NM

for Appellee

### DECISION

**ZAMORA, Justice.**

{1}    Defendant Lalo Anthony Castrillo, IV, appeals his conviction for intentional child abuse resulting in death, contrary to NMSA 1978, § 30-6-1(D), (H) (2009). Defendant argues that the State presented insufficient evidence for a jury to find that he caused

Victim Faviola Rodriguez's death. Additionally, Defendant argues that the district court abused its discretion when it denied Defendant's motion for a new trial based on newly discovered evidence.

**{2}** For the reasons set forth below, we hold that the evidence presented at trial was sufficient to support Defendant's conviction for intentional child abuse resulting in death and that the district court did not abuse its discretion in denying Defendant's motion for a new trial. We therefore affirm Defendant's conviction.

## I.      BACKGROUND

**{3}** We exercise our discretion to resolve Defendant's appeal by nonprecedential decision. *See* Rule 12-405(B)(1)-(2) NMRA. We limit our recitation of the facts accordingly.

**{4}** This case arose when the two-year-old Victim died while in Defendant's exclusive care overnight. Victim was left alone with Defendant while her mother worked an overnight shift at a convenience store. Both Victim's mother, who bathed Victim and got her ready for bed before leaving for work, and a nurse practitioner who performed a physical and neurological examination of Victim earlier in the day, testified that Victim was in good health and had no visible injuries that day before being left with Defendant. After Victim's mother left for work, Defendant was alone with Victim until first responders arrived, answering Defendant's 911 call. When the first responders arrived Victim was unresponsive. Efforts to resuscitate Victim were unsuccessful, and she was pronounced dead at the hospital. Dr. Lindsay Smith performed Victim's autopsy and testified at trial that Victim had multiple acute head injuries that occurred within the previous day which, in combination with older healing head injuries, caused her death. Based on the circumstances surrounding Victim's death, Defendant was charged with intentional child abuse resulting in the death of a child under twelve and was found guilty at trial. This appeal followed.

**{5}** Additional facts are incorporated as necessary in the Discussion section.

## II.      DISCUSSION

**{6}** On appeal, Defendant contends that the medical evidence presented at trial was insufficient to show he caused Victim's death and that the district court abused its discretion in denying his motion for a new trial. We address each claim, in turn.

### A.      The State Presented Sufficient Evidence for the Jury to Find Defendant Guilty of Intentional Child Abuse Resulting in Death

**{7}** In determining the sufficiency of evidence to uphold a conviction we look to "'whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilt beyond a reasonable doubt with respect to every element essential to a conviction.'" *State v. Duran*, 2006-NMSC-035, ¶ 5, 140 N.M. 94, 140 P.3d 515 (quoting *State v. Sutphin*, 1988-NMSC-031, ¶ 21, 107 N.M. 126, 753 P.2d 1314). In so doing "'we must view the evidence in the light most favorable to the guilty verdict,

indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict.'" *Id.* (quoting *State v. Cunningham*, 2000-NMSC-009, ¶ 26, 128 N.M. 711, 998 P.2d 176). "Contrary evidence supporting acquittal does not provide a basis for reversal because the jury is free to reject Defendant's version of the facts." *State v. Rojo*, 1999-NMSC-001, ¶ 19, 126 N.M. 438, 971 P.2d 829.

**{8}** Defendant asserts that Victim's death was caused by two prior injuries to her right temple, which were inflicted two to three weeks before he was left alone with Victim. Defendant relies on this assertion to argue that a "minor trauma" triggered rebleeding of those injuries, resulting in Victim's death, and that therefore "the medical evidence is insufficient as a matter of law" to support causation or Defendant's identity as the person who inflicted the fatal injuries.

**{9}** The facts in this case are analogous to *State v. Soto*, and our reasoning affirming the defendant's conviction in *Soto* applies similarly here. 2025-NMSC-051, 580 P.3d 781. In *Soto*, the victim was in the defendant's exclusive care when he suffered a fatal head injury. *Id.* ¶¶ 4-8. The state in *Soto* presented both medical testimony and corroborating evidence of the defendant's culpability, which was sufficient to uphold the defendant's conviction of intentional child abuse resulting in death. *Id.* ¶¶ 19-24, 56.

**{10}** Here, the State presented medical evidence such that a reasonable juror could find that the acute blunt force injuries Victim suffered were inflicted while she was in Defendant's exclusive care and that the injuries were not accidental. Two witnesses testified that on the day she was injured, Victim had no visible bruises or other signs of injury before she was left alone with Defendant. Then, Victim's autopsy showed multiple acute head and brain injuries that Dr. Smith testified were inflicted "around the time of death." Victim had multiple bruises on her scalp, indicating that there were multiple impact sites. Below the scalp, between the skull and the brain, Victim had multiple areas of acute subdural hemorrhage, multiple areas of acute subarachnoid hemorrhage, and acute hemorrhage around the optic nerve. Dr. Smith testified that while a fall from a bed could result in subdural hemorrhage, she would not expect to see "this much injury" from a fall. This was in part because the injuries were multifocal, meaning there was hemorrhage in multiple parts of the brain. Ultimately, Dr. Smith concluded that Victim's death was caused by "the combination of all of the blunt injuries to her head" including both the acute injuries and healing injuries she suffered previously.

**{11}** In *Soto*, the defendant argued that the victim hit his head on a sink, causing a rebleed of an earlier injury he suffered falling off of a slide. *Id.* ¶ 10. Defendant similarly contends here that Victim's death was caused by a "minor trauma," such as falling and hitting her head, causing a rebleed of her earlier injuries. The State's experts in *Soto* opined that contact with a sink was not consistent with the injuries the victim suffered, in part because there must have been a great deal of force to produce the injuries. *Id.* ¶ 20. Here, it was not the force required to produce the injuries, but the numerosity of the injuries, including the many acute injuries inflicted "around the time of death," that led Dr. Smith to conclude that Victim's death was not merely an accident.

**{12}** Defendant argues that "[t]he distinguishing fact in *Soto* is that the 'medical testimony established a specific time frame within which the defendant was alone with the child.'" Defendant's attempt to distinguish *Soto* is unavailing as it ignores evidence presented at Defendant's trial. Despite Defendant's claim otherwise, the State presented evidence that the acute injuries contributing to Victim's cause of death were inflicted on the day she died and that Victim showed no sign of injury before she was left alone with Defendant. *Id.* ¶ 22 ("'Evidence that the defendant had the best opportunity to inflict the injury' may support a guilty verdict for child abuse resulting in death." (brackets omitted) (quoting *State v. Wilson*, 2001-NMCA-032, ¶ 35, 130 N.M. 319, 24 P.3d 351, *overruled on other grounds as recognized by State v. Montoya*, 2005-NMCA-078, ¶ 11, 137 N.M. 713, 114 P.3d 393)).

**{13}** The evidence of numerous acute injuries, which Dr. Smith testified occurred within the day of Victim's death, as well as Dr. Smith's testimony that Victim's death was a homicide caused by blunt force trauma, is sufficient for a rational jury to conclude that Victim's death was nonaccidental and caused, at least in part, by injuries she suffered on the day she died. *See Duran*, 2006-NMSC-035, ¶ 5; *Rojo*, 1999-NMSC-001, ¶ 20.

**{14}** As in *Soto*, in addition to the medical evidence, the State presented corroborating evidence of Defendant's culpability. *Soto*, 2025-NMSC-051, ¶ 22. It was undisputed that Defendant was the only person with Victim after Victim's mother left for work on the night Victim died. Two witnesses testified that they observed no injuries or other indications that Victim had any health issues aside from a slight cold before being left alone with Defendant. Additionally, as in *Soto*, Defendant delayed calling 911 when he found Victim in distress. *Id.* ¶ 23 ("[The d]efendant failed to call 911 right away choosing to call [his friend] first."). Instead, Defendant turned to the internet. Over an hour before he called for help, Defendant searched online "how to get blood pu[m]ping w[hen] child in shock," and "child c[hok]es on throwu[p] during sleep." He also took a photo of Victim, apparently unconscious. Once he finally contacted Victim's mother, rather than telling her there was something wrong, Defendant responded, more than one hour later to her earlier message that she was "scared" saying, "Why babe sorry I crashed out." In total, over an hour and twenty minutes passed between Defendant's first search and his call to 911.

**{15}** As in *Soto* the "medical expert testimony and the additional inculpatory evidence in this case provided 'sufficient evidence [for the jury] to find guilt beyond a reasonable doubt.'" *Id.* ¶ 28 (quoting *State v. Consaul*, 2014-NMSC-030, ¶ 73, 332 P.3d 850).

### B. The District Court Did Not Abuse Its Discretion in Denying Defendant's Motion for a New Trial Based on Newly Discovered Evidence

**{16}** We review a trial court's ruling on a motion for new trial for abuse of discretion. *See State v. Garcia*, 2005-NMSC-038, ¶ 7, 138 N.M. 659, 125 P.3d 638.

**{17}** Defendant argues that the district court abused its discretion when it denied his motion for a new trial based on a photo Victim's mother posted on social media the day the jury returned its verdict. However, at the hearing on the motion, the State presented

undisputed evidence that the photo in question was taken six months before Victim's death. Because the photo was taken months before both Victim's death and the two earlier injuries Defendant claims caused her death, we conclude that the evidence was not material and therefore that the district court did not abuse its discretion in denying Defendant's motion for a new trial. *Id.* ¶ 1 (citing *State v. Volpato*, 1985-NMSC-017, ¶ 7, 102 N.M. 383, 696 P.2d 471 (requiring that newly discovered evidence "must be material," in addition to other requirements, to result in a new trial)); *State v. Fero*, 1988-NMSC-053, ¶ 10, 107 N.M. 369, 758 P.2d 783 (holding that evidence is material if disclosure to the defense would have a reasonable probability of resulting in a different outcome at trial).

## III.    CONCLUSION

{18}    For the reasons set out above, the State presented sufficient evidence for a rational jury to find Defendant guilty of intentional child abuse resulting in death. Additionally, the district court did not abuse its discretion in denying Defendant's motion for a new trial based on the newly discovered evidence. We therefore affirm Defendant's conviction.

{19}    IT IS SO ORDERED.

**BRIANA H. ZAMORA, Justice**

**WE CONCUR:**

**JULIE J. VARGAS, Chief Justice**

**MICHAEL E. VIGIL, Justice**

**C. SHANNON BACON, Justice**

**DAVID K. THOMSON, Justice**