Gene Curtis **BALLINGER,**
Petitioner–Appellee,

v.

Dareld **KERBY, Warden,** Respondent–
Appellant.

No. 91–2230.

United States Court of Appeals,
Tenth Circuit.

Aug. 26, 1993.

Anthony Tupler, Asst. Atty. Gen. (Tom Udall, Atty. Gen., with him, on the brief), Santa Fe, NM, for respondent-appellant.

Charles S. Aspinwall, Albuquerque, NM, for petitioner-appellee.

Before LOGAN and KELLY, Circuit Judges, and BROWN, District Judge.*

LOGAN, Circuit Judge.

Respondent Warden Dareld Kerby appeals the district court's grant of a writ of habeas corpus upon the application of petitioner Gene C. Ballinger. The grant was based on the court's determination that certain exculpatory photographic evidence was not disclosed to petitioner during his trial, thereby violating his due process rights under *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and its progeny.

I

On July 22, 1980, the partially decomposed body of Warren Uecker was discovered lying beneath a loose covering of leaves and pine needles on the Pine Cienega Ranch near Mule Creek, New Mexico. An autopsy revealed that Uecker had died some days before from a .32 caliber bullet wound to his chest. Soon thereafter, John Rizzo, a business partner of Uecker's, was arrested and charged with the murder. A grand jury subsequently indicted petitioner, petitioner's wife, Phyllis Ballinger, and petitioner's father, John Ballinger, as well as Rizzo. The charges against Phyllis and John Ballinger were eventually dropped, and the case proceeded against Rizzo and petitioner as codefendants.

At the beginning of trial, Rizzo reached an agreement with prosecutors whereby he agreed to testify against petitioner in exchange for immunity from prosecution. During trial, the prosecution introduced substan-

---

* The Honorable Wesley E. Brown, Senior United States District Judge, United States District Court for the District of Kansas, sitting by designation.

tial evidence of strife and dissention at Pine Cienega between petitioner and Uecker, creating an extremely tense atmosphere in which many ranch residents routinely carried firearms, ostensibly for their own protection. However, the only evidence linking petitioner to Uecker on the day of Uecker's disappearance was Rizzo's testimony. Rizzo testified that he had seen petitioner leading Uecker away at gunpoint on the afternoon of July 19, 1980; Uecker was never seen alive again. By contrast, Phyllis Ballinger testified for the defense that she had seen Rizzo and Uecker drive away together on the same afternoon, that Rizzo had returned alone, and that her husband had been asleep in the bedroom the entire time. Further, the defense introduced evidence that Rizzo had directed authorities to the location of both a hidden gun and Uecker's body. Rizzo claimed to have come by this information not by personal knowledge, but through "dowsing," which involved suspending a pendulum over a map, obtaining readings concerning the body's general vicinity, and going to the ranch with a "dowsing rod," with which he led authorities to the gun and to within a few hundred feet of Uecker's body.

The crux of this appeal relates to evidence concerning the bedroom window of the ranch house, through which Rizzo claimed to have observed petitioner and Uecker. Following Rizzo's testimony, the defense presented a number of witnesses who testified that the bedroom window had been covered with a thick sheet of translucent plastic, and that a person inside the bedroom could discern only shapes and shadows, not specific individuals. The prosecution offered contrary rebuttal testimony on this issue, but neither side presented any physical evidence regarding the window at the time of the murder. The jury convicted petitioner of second-degree murder.

Following a series of ultimately unsuccessful direct appeals, petitioner moved for a new trial in the state court on the basis of newly discovered evidence. Petitioner claimed that investigators for both the sheriff and the district attorney had taken numerous photographs of the ranch house, including the bedroom window, immediately after the mur-

der, and that the prosecution had failed to disclose these pictures to the defense. Although both investigators testified that they had taken dozens of pictures, to this day only one photograph has surfaced. The trial court denied the motion for a new trial, finding the one picture cumulative and not significantly exculpatory. The New Mexico Court of Appeals affirmed, holding that the photograph "would not have added much." VIII R. at 973.

Petitioner then proceeded to make a number of filings with both state and federal courts. He initially filed a habeas corpus petition in federal district court, but it was dismissed without prejudice for failure to exhaust state remedies. He then sought postconviction habeas relief in state court, raising, inter alia, the failure to disclose claim as to both the one photograph ultimately discovered and the multiple photographs never found. This petition was denied on September 24, 1986. Rather than seeking review of this denial, petitioner filed a series of additional motions with the trial court, including a "Motion for New Trial Addendum to Motion Under Rule 60.B(6) Habeas Corpus Pending." These motions were denied on October 31, 1986, with the court noting that the thirty-day period within which petitioner was entitled to seek certiorari review of the denial of his habeas corpus petition had expired on October 24. I R. doc. 17, ex. F, at 2. Petitioner filed a notice of appeal, along with a petition for a writ of error, on November 5.

On December 4, 1986, the New Mexico Court of Appeals noted that a Rule 60(b) motion is inapplicable in the habeas corpus context, and that it had no jurisdiction over either habeas appeals or petitions for writs of error. Consequently, the court transferred the appeal to the New Mexico Supreme Court. *Id.* ex. J. That court construed petitioner's appeal as a petition for a writ of certiorari, and denied it as untimely. *Id.* ex. K.

Petitioner then commenced habeas proceedings in federal district court. The magistrate judge conducted an evidentiary hearing, in which the investigators testified that they had indeed taken numerous photo-

graphs of the window, and that the pictures would have shown plastic covering the bedroom window. The magistrate judge found that the prosecution had withheld exculpatory evidence in violation of *Brady* and *United States v. Buchanan*, 891 F.2d 1436 (10th Cir.1989), *cert. denied*, 494 U.S. 1088, 110 S.Ct. 1829, 108 L.Ed.2d 958 (1990), and recommended that the petition be granted. The district court adopted the magistrate judge's findings and recommendations, and the respondent warden appealed. ·

## II

The legal conclusions of a district court in a habeas proceeding are reviewed de novo. *Martin v. Kaiser*, 907 F.2d 931, 933 (10th Cir.1990). Respondent raises the issue of procedural default, which we must resolve before considering the merits.[1] Throughout the federal proceedings, respondent has maintained that petitioner defaulted his claim as to the multiple photographs by failing to pursue it in state court. The respondent makes no argument that the claim based on the single photograph (the one actually found) has been defaulted; indeed, its brief seems clearly to concede that issue, arguing instead that the picture is not in fact exculpatory.

The potential default in this case arises from petitioner's failure, following the denial of his state habeas petition, to perfect his petition for a writ of certiorari to the New Mexico Supreme Court in a timely fashion. The Supreme Court has made it clear that habeas relief is unavailable if the state courts have denied relief on an independent and adequate state ground. *See Coleman v. Thompson*, — U.S. —, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). That doctrine applies "to bar federal habeas when a state court

declined to address a prisoner's federal claims because the prisoner had failed to meet a state procedural requirement." *Id.*, — U.S. at —, 111 S.Ct. at 2554. Here, the New Mexico Supreme Court construed petitioner's appeal as a petition for a writ of certiorari, and denied it as untimely, without considering the merits.[2] It is impossible to conclude that the denial "fairly appear[s] to rest primarily on federal law or [is] interwoven with federal law." *Id.*, — U.S. at —, 111 S.Ct. at 2557. Thus, we cannot construe it as a determination on the merits of petitioner's federal claims, but only as an independent and adequate state ground for denying relief.

■ Although the district court did not discuss procedural default in its decision, neither it nor the magistrate judge had the benefit of this court's recent decision in *Dulin v. Cook*, 957 F.2d 758 (10th Cir.1992). In that case, we held that the prisoner's failure to seek discretionary relief from the Utah Supreme Court in a state postconviction proceeding constituted a failure to exhaust, which became procedural default upon the expiration of the time within which the petitioner could have sought such review. *Id.* at 759. The situation in *Dulin* is virtually identical to that presented here, and we are bound by that decision. Therefore, petitioner's claim of a federal due process violation, raised before the state trial court in his state habeas petition, was procedurally defaulted by his failure to obtain timely review by the New Mexico Supreme Court. ·

Although the defense of procedural default applies to petitioner's claim concerning the multiple photographs, it does not apply with respect to the single photograph, which respondent concedes was presented on appeal

---

1. Respondent concedes, and we agree, that petitioner has exhausted his state-law remedies. *See Miranda v. Cooper*, 967 F.2d 392, 398 (10th Cir.), *cert. denied*, — U.S. —, 113 S.Ct. 347, 121 L.Ed.2d 262 (1992). This is not inconsistent with a finding of procedural default. "A habeas petitioner who has defaulted his federal claims in state court meets the technical requirements for exhaustion; there are no state remedies any longer 'available' to him." *Coleman v. Thompson*, — U.S. —, —, 111 S.Ct. 2546, 2555, 115 L.Ed.2d 640 (1991).

2. Even if petitioner's appeal were not considered a petition for certiorari from the denial of his habeas petition, but rather as a direct appeal from the denial of his Rule 60(b) motion, the analysis would be unchanged. Petitioner then would have failed to seek any review of the denial of his habeas petition, and such a failure constitutes procedural default. *Dulin v. Cook*, 957 F.2d 758, 759 (10th Cir.1992).

to the state courts and preserved as an issue for federal habeas review.

### III

■ Before turning to the merits of the single photograph claim, we consider the consequences of petitioner's default on the multiple photograph issue.

In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman,* —— U.S. at ——, 111 S.Ct. at 2565. Petitioner's pro se status during the period in question does not exempt him from these requirements. *Dulin,* 957 F.2d at 760. To show cause, petitioner would have to demonstrate "that some objective factor external to the defense impeded [his] efforts to comply with the State's procedural rule." *Murray v. Carrier,* 477 U.S. 478, 488, 106 S.Ct. 2639, 2645, 91 L.Ed.2d 397 (1986). "Objective factors that constitute cause include interference by officials that makes compliance with the state's procedural rule impracticable, and a showing that the factual or legal basis for a claim was not reasonably available to [petitioner]." *McCleskey v. Zant,* 499 U.S. 467, ——, 111 S.Ct. 1454, 1470, 113 L.Ed.2d 517 (1991) (internal quotations omitted). After a thorough review of the record, we can find nothing petitioner could plead that would meet the cause requirement; consequently, a remand on this issue is unnecessary.

■ Even though petitioner would be unable to demonstrate cause for his default of the multiple photographs claim, we may nevertheless reach the issue if failure to do so would constitute a fundamental miscarriage of justice. *Sawyer v. Whitley,* —— U.S. ——, ——, 112 S.Ct. 2514, 2519, 120 L.Ed.2d 269 (1992). This is an extremely narrow exception, implicated only in "an extraordinary case, where a constitutional violation has probably resulted in the conviction of one

who is actually innocent." *Carrier,* 477 U.S. at 496, 106 S.Ct. at 2650. Thus, to prevail, petitioner must demonstrate that the unproduced photographs affirmatively demonstrate his innocence. Even assuming their alleged content, petitioner cannot meet this standard.

■ The most these photographs could possibly show is the presence of translucent plastic over the bedroom window a few days after the murder. This would significantly impeach the testimony of Rizzo, who claimed to have seen petitioner and Uecker through that window on the day of Uecker's disappearance. There is no doubt that such photographs would undermine the finding of guilt against petitioner. But more is required to satisfy the actual innocence exception, or it would have no greater meaning than the prejudice prong of the cause and prejudice inquiry. *See Sawyer,* —— U.S. at —— n. 13, 112 S.Ct. at 2522 n. 13. The photographs would not show petitioner's innocence of the crime, only cast doubt upon the testimony of his primary accuser. Assuming the prosecution's possession of these photographs at trial and accepting the testimony of those who took them as to their content, we cannot conclude that the failure to disclose these pictures to the defense resulted in the conviction of one who is actually innocent of the crime charged. Because petitioner cannot meet either the cause and prejudice or actual innocence exceptions, his failure to disclose claim based on the multiple photographs cannot be considered on the merits.

### IV

Turning to the single photograph issue, we first note that we are not here bound by the traditional presumption of correctness applicable to facts found by the state courts. "[T]he question of materiality and the possible effect of the withheld evidence on the verdict[ ] is a mixed question of fact and law. The state court's ultimate conclusion under *Brady* therefore is not entitled to a presumption of correctness under section 2254(d) and is open to review by federal courts." *Bowen v. Maynard,* 799 F.2d 593, 610 (10th Cir.), *cert. denied,* 479 U.S. 962, 107 S.Ct. 458, 93

**1376**

L.Ed.2d 404 (1986); *accord Buchanan,* 891 F.2d at 1440.[3] Also, "because impeachment is integral to a defendant's constitutional right to cross-examination, there exists no pat distinction between impeachment and exculpatory evidence under *Brady.*" *Buchanan,* 891 F.2d at 1443; *accord United States v. Bagley,* 473 U.S. 667, 676–77, 105 S.Ct. 3375, 3380–81, 87 L.Ed.2d 481 (1985).

■ Under *Brady,* disclosure of exculpatory or impeachment evidence is mandated only if that evidence is "material." 373 U.S. at 87, 83 S.Ct. at 1197. "The evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *Bagley,* 473 U.S. at 682, 105 S.Ct. at 3383 (opinion of Blackmun, J.).[4]

■ The picture shows the ranch house from the outside, with the bedroom window on the right. The view of the window is partially obstructed by a tree branch, and a shadow from the eaves of the house falls on the window's upper half. Two other windows are clearly visible, one obviously covered with plastic and one not. Without enhancement one cannot tell with absolute certainty whether the bedroom window is covered with plastic; however, it appears to be so covered. When compared to the two other windows visible in the picture, the appearance of the unobscured portion of the bedroom window closely resembles that of the covered window, and is strikingly different from the uncovered one.

The picture, as it appears in the record before us, does not resolve the issue beyond question, but if available at trial it would have cast substantial doubt on crucial statements made by the state's primary witness. Rizzo not only testified that he could see out

the window, but that it was open and not covered with plastic. If that testimony had been discredited by physical evidence, rather than just contrary testimony, the prosecution's link between petitioner and Uecker on the day of the murder would have been broken, and the jury would not have had sufficient evidence to support a conviction. Rizzo's testimony was already suspect given his professed use of "dowsing" to help discover Uecker's body and the weapon. We believe that the addition of the photograph as additional impeachment evidence would have destroyed his credibility. The case against petitioner was thin at best, and the fact that the photograph was not presented to the jury undermines our confidence in the outcome of the trial. Therefore, we conclude that, had the picture been produced, there is a reasonable probability that the outcome would have been different, and thus that the picture was material to the defense.

Because the prosecution failed to disclose material evidence that would have impeached its primary witness, petitioner's trial did not comport with the requirements of due process. Petitioner's conviction was therefore obtained in violation of the Constitution, and the district court's decision granting the writ of habeas corpus is ·AFFIRMED.

PAUL J. KELLY, Jr., Circuit Judge, dissenting.

I respectfully dissent from Part IV of the opinion and would reverse. The photo in question is not exculpatory, and when placed in the context of this lengthy trial, it does not create a reasonable probability of a different outcome. After an evidentiary hearing on November 26, 1985, involving many of the same witnesses, VIII R. 943–44 (district court memorandum), 957–61 (summary of hearing), and arguments, VIII R. 927–42, the state district court denied Mr. Ballinger's motion for a new trial based on the photo-

---

3. The Supreme Court recently reconsidered the proper level of deference to be accorded state court findings on mixed questions, but declined to resolve the issue. *See Wright v. West,* —— U.S. ——, 112 S.Ct. 2482, 120 L.Ed.2d 225 (1992). We therefore adhere to our prior rulings on this question.

4. This definition was endorsed by five members of the Court through two separate opinions. Justice O'Connor joined Justice Blackmun's opinion, and Justice White, joined by Chief Justice Burger and then-Justice Rehnquist, concurred, specifically adopting the definition. *See Bagley,* 473 U.S. at 685, 105 S.Ct. at 3385 (White, J., concurring).

graph. The state district court made the following findings:

> 1. It has not been shown that the photo ... submitted by the Defendant, would probably change the result if a new trial is granted.
>
> . . . .
>
> 5. [The photo] is mainly cumulative when considered with other photos used at trial and the testimony of other witnesses.
>
> 6. The photo ... as to plastic over a bathroom window and uncertainty as to plastic over the bedroom window in question is mainly impeaching or contradictory.

VIII R. 945–46.

The state court of appeals affirmed the district court on this point:

> A motion for new trial based on newly discovered evidence should not be granted unless the new evidence fulfills the following requirements, among others: it will probably change the result if a new trial is granted and it must be not merely cumulative, impeaching, or contradictory. *State v. Volpato*, 102 N.M. 383, 696 P.2d 471 (1985). In light of the mass of evidence presented at the first trial regarding the question of whether Rizzo could see out of the window (Tr. of first trial at 1523–25, 1586, 1608–09, 2094–96, 2313–15, 2335, 2430–31 . . .), the trial court was correct in its ruling. The foregoing transcript references show that there was much testimony on the subject of seeing out the window, including whether or not the window was covered with plastic, with credible evidence on both sides of the issue. The photo at issue would not have added much.

VIII R. 973.

Mr. Ballinger prevails on his *Brady* claim "only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *United States v. Bagley*, 473 U.S. 667, 682, 105 S.Ct. 3375, 3383, 87 L.Ed.2d 481 (1985). Materiality and the possible effect of the withheld evidence under *Brady* is a mixed question of fact and law, rather than a basic, primary or historical fact to which we would owe deference to state court findings under 28 U.S.C. § 2254(d). *See Chaney v. Brown*, 730 F.2d 1334, 1346 (10th Cir.1984).

Notwithstanding our lack of deference, it is apparent that the New Mexico courts have come to a very different conclusion about the photograph applying a standard (new trial based on newly discovered evidence) very similar to that required by *Bagley*. In my view, the conclusion by the New Mexico courts is correct concerning the value of this photograph. The evidence was controverted concerning whether plastic rendered the window opaque, thereby precluding Rizzo from seeing outside, or merely translucent. This photograph tells us nothing about whether Rizzo actually could have observed Mr. Ballinger leading Uecker away that afternoon. At best, it is merely cumulative impeachment evidence.

While the photo was taken within days of discovery of the victim's body, it is difficult to tell whether the bedroom window is covered with plastic because a tree branch and a shadow largely obscure the window. That the photograph might be material with enhancement, Ct. Op. at 1376, seems speculative and the "mere possibility that an item of undisclosed information might have helped the defense" does not make it material. *United States v. Agurs*, 427 U.S. 97, 109–10, 96 S.Ct. 2392, 2400–01, 49 L.Ed.2d 342 (1976). Even imputing the nondisclosure of this photo to the prosecutor, which is belied by the record, this very ambiguous impeachment evidence simply is not "clearly supportive of a claim of innocence," such that any prosecutor should have brought it to the attention of the defendant. *Id.* at 107, 96 S.Ct. at 2399.

The purpose of the *Brady* rule is fairness—we should affirm the federal district court only if "the omission deprived the defendant of a fair trial." *Agurs*, 427 U.S. at 108, 96 S.Ct. at 2399. Mr. Ballinger's trial was fair despite the absence of the photograph. The jury was aware of Rizzo's immunity, his "dowsing" to find the body and the possibility that he lied about whether plastic was on the window. In addition to testimony by seven witnesses, the jury saw subsequent

photographs in which plastic had been torn off the window, but the nailing strips remained. The issue was argued before the jury. It is unlikely that the addition of this photograph would settle the issue, let alone "destroy[ ] [Rizzo's] credibility." Ct.Op. at 1376.

Whether the result in this case would have been different with the addition of the photograph must be addressed in the context of the entire record. *Agurs*, 427 U.S. at 112, 96 S.Ct. at 2401–02. There is ample testimony in the record establishing that the defendant had quarrelled with the victim (his business partner) for many years and threatened to kill the victim on a regular basis and in public. There were no eyewitnesses to the crime; this is a circumstantial evidence case which plainly implicated both Mr. Ballinger and Rizzo, and the jury probably so concluded.

I would reverse with instructions to deny the writ.