**UNITED STATES of America,
Plaintiff–Appellee,**

**v.**

**Carlton Lee HUGHES, Defendant–
Appellant.**

**No. 93–2197.**

United States Court of Appeals,
Tenth Circuit.

Aug. 31, 1994.

Robert T. Baskett, of Burleson, Pate and Gibson, Dallas, TX (Harry Louis Zimmermann, with him on the brief), for defendant/appellant.

Louis E. Valencia, Asst. U.S. Atty., Albuquerque, NM (Larry Gomez, U.S. Atty. and Joe M. Romero, Jr., Asst. U.S. Atty., with him on the brief), for plaintiff/appellee.

Before EBEL and McKAY, Circuit Judges, and VAN BEBBER, District Judge *.

EBEL, Circuit Judge.

Defendant–Appellant Carlton Lee Hughes ("Hughes") appeals from the district court's denial of his motion for a new trial under Fed.R.Crim.P. 33. Hughes alleges that the government suppressed evidence that would have effectively impeached a key government witness who testified against him at his trial for possession with intent to distribute more than 100 grams of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A). We affirm.

## BACKGROUND

The record contains conflicting testimony about the events surrounding Hughes' arrest and conviction. Officer Daniel Sanchez ("Sanchez") of the New Mexico State Police stopped Hughes on Interstate 40 outside of Albuquerque on December 2, 1989. Sanchez alleges that he observed Hughes travelling 67 miles per hour in a 65 mile per hour zone: Hughes did not slow when he entered a 55 mile per hour zone, so Sanchez stopped him for speeding. Sanchez testified that he found Hughes to be nervous and excited. In response to questions from Sanchez, Hughes stated that he was returning from a skiing trip in California and was carrying the bags of some of his skiing companions. Sanchez asked Hughes whether he was carrying any guns, drugs, or improper produce. Sanchez alleges that Hughes said no and offered to let Sanchez look anywhere he wanted. Sanchez then handed Hughes a consent to search form, that he alleges Hughes read and signed. Sanchez asked Hughes if he understood the form, and Hughes replied affirmatively. Sanchez testified that Hughes appeared to be intelligent and cognizant of what was going on.

Sanchez then testified that Hughes approached the trunk of his car and asked Sanchez if he wanted to search the trunk. Apparently referring to Hughes' offer to open the trunk, Sanchez said "if that is what you want to do, feel free to do so." Aplee. at 5. Hughes then allegedly motioned for Sanchez to search the trunk. The trunk was filled with luggage and ski equipment. Sanchez grabbed one soft bag and felt brick-like objects inside. He testified that he then looked at Hughes and found him to be pale, shaking, and upset. Sanchez asked what the bricks were, and Hughes allegedly could only reply "ah, ah, ah." Sanchez then pulled the bricks from the bags and found that they appeared to be methamphetamine. Sanchez

* Honorable G. Thomas Van Bebber, District Judge for the United States District Court for the District of Kansas, sitting by designation.

administered *Miranda* warnings. At that point, Hughes allegedly started pleading with Sanchez to let him go. Sanchez asked what the substance was, and Hughes immediately replied "methamphetamine" and told him that there were 75 pounds of it. Hughes allegedly offered Sanchez $11,000 to let him go.

Sanchez told Hughes he would need to think about it, returned to his patrol car, and retrieved a tape recorder. Armed with a hidden tape recorder, Sanchez taped a brief conversation with Hughes. Sanchez re-warned Hughes of his *Miranda* rights. Hughes then admitted that the substance was methamphetamine and said that it weighed 75 pounds. He said that he had been paid $15,000 to transport the drugs but would not say for whom he was working. Hughes again offered money to Sanchez.

Hughes' trial testimony regarding the stop was quite different. He denied that he had any knowledge of the drugs in the trunk, claiming that they must have been put in there by someone in California. He testified that he had not been speeding, and noted that he would not have sped in the presence of an officer had he known that he was carrying a trunkload of drugs. Further, he hypothesized that he had been stopped because he was driving a "flashy" car. He denied that he had been nervous when he was stopped because he had not thought he had done anything wrong. Hughes testified that Sanchez harassed him and accused him of carrying drugs. He argued that Sanchez claimed that he had the right to search his car, and that he allowed Sanchez to do so based on this representation. He signed the consent form because Sanchez insisted that he do so.

Hughes denied inviting Sanchez to search the trunk, but admits that he held the trunk door open so that it did not fall on Sanchez. Hughes claims that Sanchez did not feel for drugs on the outside of the bags, but started tearing things out of bags. Hughes only became visibly upset when Sanchez pulled the drugs out of the bag. He alleges that Sanchez told him it was methamphetamine and laid the drugs out on the ground to count the number of bricks. Hughes says that

Sanchez then harassed him intensely about the drugs. He claims to have only repeated back to the officer that the drug was methamphetamine. Hughes testified that, because of Sanchez' harassment and refusal to accept his claim to be returning from a skiing trip, he blindly acquiesced in the officer's identification of the drug as methamphetamine. He claimed that he made the statements on the tape about the bribe and the transportation of drugs out of fear and because Sanchez solicited a bribe before the taping started. At trial, he argued that the statements on the tape were lies to tell Sanchez what he wanted to hear in order to stop the harassment.

Hughes was indicted for possession of the methamphetamine with intent to distribute. He moved for suppression of the evidence against him because, *inter alia,* he claimed that the stop was pretextual and that his consent to search was involuntary. After a hearing at which both Hughes and Sanchez testified, the district court denied Hughes' motion.

At trial, Hughes centered his defense around the claims that he had no knowledge that the drugs were in his car, and that the statements on the tape were coerced. Nonetheless, the jury convicted Hughes on June 13, 1990. Hughes appealed to this court, which affirmed his conviction in an unpublished opinion. *United States v. Hughes,* 931 F.2d 63, 1991 WL 59383 (10th Cir.1991) (Table, Text in Westlaw, No. 90–2114).

In July 1991, Sanchez was deposed pursuant to a civil forfeiture proceeding, presumably related to the drug seizure in this case. During this deposition, Sanchez related that, from mid-February 1990 and continuing through Hughes' criminal trial, he had been on either administrative or sick leave because of mental problems. In particular, Sanchez was made to take leave because of work-related stress and post-traumatic stress syndrome. The State Police ordered him to see a psychiatrist. Sanchez testified at the deposition that he was having problems with his memory and concentration during the relevant period of Hughes' prosecution. Further, Sanchez testified that he reported these problems to the prosecutor prior to trial

"because the last thing I'd want to do is commit a perjury or not tell the truth on the record, and I don't want to be—I don't want to do that, mistakenly or any other way make mistakes." Sanchez Deposition, Aplt.App. Vol. I at 111. The prosecutor told Sanchez to admit the problems if asked on cross-examination, but he did not reveal any of this information to Hughes' counsel.

During the criminal trial, the government had not revealed this information despite the fact that the judge had issued a general discovery order instructing the government to make available to Hughes all favorable evidence under *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). The government stated in its Omnibus Hearing Report that it had given Hughes all favorable evidence and would relay any such information that it subsequently obtained. The government certified that it possessed no relevant mental examinations related to Sanchez.[1] Further, specific discovery requests by Hughes had put the government on clear notice that Sanchez' credibility would be at issue in both the suppression hearing and at trial. However, the defense asked specifically only for evidence pertaining to Sanchez' conduct during other traffic stops and for information pertaining to complaints from other citizens. No specific requests were made for Sanchez' general mental health and leave records.

On April 4, 1993, Hughes filed a motion for a new trial pursuant to Fed.R.Crim.P. 33., claiming that the government had violated its duty to disclose favorable material evidence under *Brady,* violated his right to cross-examination under the Sixth Amendment, and that the newly discovered evidence warranted a new trial—even absent a determination that the government suppressed it. The district court denied Hughes' motion for a new trial because it found that the withheld information would not have changed the result of the trial. Hughes appeals from the denial of his Rule 33 motion.

## DISCUSSION

Although we generally review the denial of a motion for a new trial for an abuse of discretion, we review de novo claims that the prosecution violated *Brady,* including the determination of whether suppressed evidence was material.[2] *United States v. Rogers,* 960 F.2d 1501, 1510 (10th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 817, 121 L.Ed.2d 689 (1992). In *Brady,* the Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material to either guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady,* 373 U.S. at 87, 83 S.Ct. at 1196–97. To establish a *Brady* violation, the defendant must establish: 1) that the prosecution suppressed evidence; 2) that the evidence was favorable to the accused; and 3) that the evidence was material. *United States v. DeLuna,* 10 F.3d 1529, 1534 (10th Cir.1993). The first two elements are not disputed in this case, because the government admits that it did not relay the information regarding Sanchez' mental condition and that the evidence would have clearly been favorable impeachment evidence for Hughes. So, we turn to the issue of materiality.

"[E]vidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *United States v. Bagley,* 473

---

1. Hughes makes much of this fact. However, we can find no evidence in the record that there were reports of mental examinations of Sanchez or that the prosecution ever possessed any such reports. Thus, there is no indication that the government made a factual misrepresentation in this regard.

2. Hughes suggests that we can review his *Brady* claim as if it were a habeas corpus claim under 28 U.S.C. § 2255 if we would not review it under Fed.R.Crim.P. 33. This is unnecessary, however, because we have reviewed *Brady* claims under Rule 33 in the past. *E.g. United States v. Sutton,* 767 F.2d 726, 728–29 (10th Cir.1985). *See also United States v. Young,* 20 F.3d 758, 762 (7th Cir.1994) ("A timely motion for a new trial under Rule 33 allows the district court to consider and the appellate court to review an accompanying *Brady* claim without invoking habeas corpus jurisdiction.").

U.S. 667, 682, 105 S.Ct. 3375, 3383, 87 L.Ed.2d 481 (1985) (Blackmun, J.); *Ballinger v. Kerby,* 3 F.3d 1371, 1376 (10th Cir.1993).[3] To make the materiality determination, we view the suppressed evidence's significance in relation to the record as a whole. *United States v. Wolf,* 839 F.2d 1387, 1391 (10th Cir.), *cert. denied,* 488 U.S. 923, 109 S.Ct. 304, 102 L.Ed.2d 323 (1988). "[B]ecause impeachment is integral to a defendant's constitutional right to cross-examination, there exists no pat distinction between impeachment and exculpatory evidence under *Brady.*" *Ballinger,* 3 F.3d at 1376 (quoting *United States v. Buchanan,* 891 F.2d 1436, 1443 (10th Cir.1989), *cert. denied,* 494 U.S. 1088, 110 S.Ct. 1829, 108 L.Ed.2d 958 (1990)).

Hughes argues that the impeachment evidence about Sanchez was material because of his characterization of the trial merely as a swearing match between himself and Sanchez regarding the circumstances of the stop.[4] If the jury believed him, Hughes argues, they would not have inferred that he had knowledge of the presence of the drugs in his trunk.

However, a review of the record in its entirety convinces us that there is no reasonable probability that impeachment evidence regarding Sanchez' mental condition would have affected the outcome of the trial. Contrary to Hughes' suggestion, the jury considered a great deal of inculpatory evidence in addition to Sanchez' testimony. Perhaps the most damaging to Hughes' case is the tape-recorded conversation between Hughes and Sanchez during the stop. In this tape, Hughes admitted that he was transporting drugs, that the substance in the trunk was methamphetamine, that there were seventy-five pounds of the drug, and that he was being paid $15,000 to deliver it. Further, the tape contains an attempt by Hughes to bribe Sanchez. In addition, Hughes' argument that someone placed the drugs in the trunk without his knowledge is substantially undercut by the evidence that a small quantity of methamphetamine was also found in a compartment in the rear-view mirror of his car. A government expert testified that these drugs were from the same batch as the drugs found in the trunk. Hughes has no explanation for how these drugs found their way into the passenger compartment. Further, the impeachment evidence would not have made it any more likely that the jury would have believed his improbable story that someone put 75 pounds of methamphetamine—about $5 million worth—in his trunk for a long trip without advising him of that fact. The nature of the impeachment evidence was such that it could have raised questions about the accuracy of the details of Sanchez' testimony, but not necessarily about the story as a whole, as opposed to impeachment evidence relating to bias or motive for perjury. Given the totality of the evidence we do not think that it is reasonably probable that the impeachment evidence would have altered the outcome of the trial. Thus, we find that the evidence was not material and there was no *Brady* violation in this case.

■ Hughes also claims that his Sixth Amendment right to cross-examination was infringed because of the government's failure to provide the impeaching evidence about Sanchez. Where the trial court did not actually restrict the defendant's ability to cross-examine on a particular issue, but the defendant claims that the government did not disclose information that would have been helpful to the cross-examination, we review

**3.** "This definition was endorsed by five members of the Court through two separate opinions. Justice O'Connor joined Justice Blackmun's opinion, and Justice White, joined by Chief Justice Burger and then-Justice Rehnquist, concurred, specifically adopting the definition." *Ballinger,* 3 F.3d at 1376 n. 4.

**4.** At oral argument, Hughes' counsel, in response to questioning, claimed that Hughes' due process rights were violated because the impeachment evidence would have been material at his suppression hearing. However, Hughes has not raised this issue either below or in the opening brief to this court. Because this issue was not raised, we decline to consider this argument. *See Farmers Ins. Co. v. Hubbard,* 869 F.2d 565, 570 (10th Cir.1989) (we will generally not address issues not considered and ruled upon by the district court with the narrow exceptions of subject matter jurisdiction or immunity); *Johnson by Johnson v. Thompson,* 971 F.2d 1487, 1499 (10th Cir.1992) ("In general, we do not address issues not briefed."), *cert. denied,* ——— U.S. ———, 113 S.Ct. 1255, 122 L.Ed.2d 654 (1993).

using the same materiality standard as in the *Brady* context. *Bagley,* 473 U.S. at 678, 105 S.Ct. at 3381. Since we conclude that the evidence was not material in the *Brady* sense, we conclude that Hughes' Sixth Amendment rights were not violated.

■ Finally, Hughes argues that, regardless of whether the non-disclosed evidence was *Brady* material, the evidence of Sanchez' mental condition was important new evidence that should justify a new trial under Fed.R.Crim.P. 33. We review the district court's decision to deny a motion for new trial on the basis of newly discovered evidence under an abuse of discretion standard. *United States v. Sutton,* 767 F.2d 726, 728 (10th Cir.1985).

> The alleged newly discovered evidence must be more than impeaching or cumulative; it must be material to the issues involved; it must be such that it would probably produce an acquittal; and a new trial is not warranted if the new evidence is such that, with reasonable diligence, it could have been discovered and produced at the original trial.

*United States v. Youngpeter,* 986 F.2d 349, 356 (10th Cir.1993) (quoting *Sutton,* 767 F.2d at 728). The district court denied the motion in this case because it determined that the impeachment evidence was unlikely to have produced an acquittal. Based on our discussion above, we conclude that the district court did not abuse its discretion in denying the motion for new trial.

Accordingly, we AFFIRM the district court's denial of Hughes' motion for a new trial.