72 F.3d 138
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Matias Carlos CAMPOS, Defendant-Appellant.
 No. 94-3359.
 United States Court of Appeals, Tenth Circuit.
 Nov. 24, 1995.
 
 Before ANDERSON, BALDOCK, and LUCERO, Circuit Judges.
 ORDER AND JUDGMENT*
 STEPHEN H. ANDERSON, Circuit Judge.
 
 
 1
 Matias Carlos Campos, in his capacity as the Deputy Chief Building Inspector for Kansas City, Kansas, was convicted, following a jury trial, on two counts of accepting bribes in exchange for overlooking building code violations. 18 U.S.C. Secs. 1951, 666(a)(1)(b). Campos moved for a new trial on the ground that he was denied due process under the principles articulated in Brady v. Maryland, 373 U.S. 83 (1963). He contends the prosecution withheld the following exculpatory evidence, which would have impeached a key government witness, P.J. McGraw: (i) a memo, written by FBI special agent Jeff Lanza, revealing that the government would recommend granting McGraw probation for cooperating in the FBI's public corruption investigation; (ii) details of McGraw's plea bargain concerning tax evasion charges; and (iii) a tape of the interior of McGraw's topless nightclub, the Shadows.
 
 
 2
 The district court denied Campos's motion for a new trial because it found that the information in question would not have changed the outcome of the trial. We agree.
 
 
 3
 "Although we generally review the denial of a motion for a new trial for an abuse of discretion, we review de novo claims that the prosecution violated Brady...." United States v. Hughes, 33 F.3d 1248, 1251 (10th Cir.1994). In Brady, the Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." Brady, 373 U.S. at 87; see Kyles v. Whitley, 115 S.Ct. 1555, 1564 (1995).
 
 
 4
 We recently reviewed the essential elements of a Brady violation in Banks v. Reynolds, 54 F.3d 1508 (10th Cir.1995):
 
 
 5
 In order to establish a Brady violation, a ... petitioner must show that: (1) the prosecution suppressed evidence; (2) the evidence was favorable to the accused; and (3) the evidence was material to the defense. Fero v. Kerby, 39 F.3d 1462, 1472 (10th Cir.1994), cert. denied, 115 S.Ct. 2278 (1995); United States v. DeLuna, 10 F.3d 1529, 1534 (10th Cir.1993)....
 
 
 6
 In reviewing [Campos's] Brady claim ... the primary consideration under Brady is fairness. Thus, we "should [remand for a new trial] only if 'the omission deprived the defendant of a fair trial.' " Ballinger v. Kerby, 3 F.3d 1371, 1377 (10th Cir.1993) (Kelly, J., dissenting) (quoting United States v. Agurs, 427 U.S. 97, 108 (1976).
 
 
 7
 ....
 
 
 8
 "[E]vidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." United States v. Bagley, 473 U.S. 667, 682 (1985) (Blackmun, J. joined by O'Connor, J.); United States v. Robinson, 39 F.3d 1115, 1118 (10th Cir.1994). A "reasonable probability" is a " 'probability sufficient to undermine confidence in the outcome.' " Bagley, 473 U.S. at 682 (quoting Strickland v. Washington, 466 U.S. 668, 694 (1984).
 
 
 9
 ... [W]e review the cumulative impact of the withheld evidence; its utility to the defense as well as its potentially damaging impact on the prosecution's case. Kyles, 115 S.Ct. at 1566-69. Furthermore, recognizing that, in the usual case, not "every item of the State's case" will be undercut if the Brady material is disclosed, id. at 1574, we evaluate the materiality of withheld evidence in light of the entire record in order to determine if "the omitted evidence creates a reasonable doubt that did not otherwise exist." Agurs, 427 U.S. at 112; Hughes, 33 F.3d at 1252; cf. United States v. Buchanan, 891 F.2d 1436, 1441 (10th Cir.1989), cert. denied, 494 U.S. 1088 (1990).
 
 
 10
 Banks, 54 F.3d at 1516, 1518.
 
 
 11
 Assuming, arguendo, that the three items of information identified by Campos were in fact wrongfully withheld by the government, and favorable to Campos, he is still not entitled to a new trial because there is no reasonable probability that the outcome of the trial would have been different if the defense had possessed the information.
 
 
 12
 There was abundant evidence incriminating Campos apart from the in-court testimony of P.J. McGraw. The following evidence was presented at trial for Count I:
 
 
 13
 On November 1, 1990, Campos purchased a 1982 Chevy pickup truck for approximately $1738.75, a "wholesale price," from McGraw owned, Boulevard Credit Motors ("BCM"). R.Vol. V, Doc. 72 at 68-70. On April 4, 1991, McGraw forgave the final $322.32 owed by Campos. Id. at 70. On April 12, 1991, BCM gave Campos a free 1983 pickup truck. Id. at 76. Two witnesses testified that Campos then had this second pickup titled under his cousin's name. Id. at 77-79; id. at 103-105, 112-113.
 
 
 14
 Chief building inspector, Raymond D. Bond, testified that during this period, inspectors Steve McCarty and Frankie Hilt were citing Boulevard Service Center ("BSC") for code violations, but Campos nonetheless approved BSC. Id. at 33-40, 48, 56-58. At the time of trial, some three years later, the violations cited by McCarty and Hilt, but approved by Campos, remained uncorrected. Id. at 40-41.
 
 
 15
 The government established the following evidence for Count II:
 
 
 16
 McGraw testified extensively, but his testimony is corroborated through testimonies of other witnesses, tape-recordings, and admissions by Campos himself. Thus, in a phone call, on December 21, 1993, McGraw reminded Campos of a past arrangement and offered him a "Christmas bonus." R.Vol. III, Doc. 46, at 12-14; R.Vol. IV, Doc. 48, at 135-39, 149. Campos never reported this conversation and instead responded, "All right," to McGraw's statement, "I have no intention of pulling a permit." R.Vol. IV, Doc. 48, at 136-37. McGraw then called Campos a second time to arrange a meeting at Shadows.
 
 
 17
 On December 28, 1993, McGraw met Campos at Shadows and gave him $500.00 in exchange for overlooking several building code violations and agreeing to help if McGraw got caught. R.Vol. III, Doc. 47, at 38-39. Campos admitted receiving $500.00 during this meeting, R.Vol. IV, Doc. 48, at 75-81, and referred to Shadows as a "shell of a building." Id. at 71. McGraw confirmed that the inside "was completely destroyed" and that plumbing, electrical, and duct work were all subsequently done. R.Vol. III, Doc. 47, at 34-36. These types of projects all require a permit. R.Vol. IV, Doc. 48, at 145, 148; R.Vol. V, Doc. 72, at 26-28. Clifford Loomis, who did repairs on Shadows in 1994, testified that permits were needed and "wondered who was getting paid off." Vol. VI, Doc. 73, at 175-76.
 
 
 18
 Perhaps the most damaging evidence was the tape-recorded conversations between Campos and McGraw. See Hughes, 33 F.3d at 1252. The jury heard Campos, on tape, make multiple statements showing that he realized permits were necessary, but accepted a bribe rather than enforce the permit requirements. Campos's statements include:
 
 
 19
 "You want to do this without a permit?" R.Vol. IV, Doc. 48, at 146.
 
 
 20
 "You think you can be doing this without getting caught?" Id. at 149-50.
 
 
 21
 "Well, I mean, you know, if it ever comes to me, what I want you to do is don't say so much and you just tell them, uh, there was just smoke damage and we just clean [sic] it up and paint it." Id. at 154.
 
 
 22
 "But I want--what I want you to do is say, if somebody does come in and put a stop red notice, just say, hey, I called up over there, they told me I didn't need a permit because all we was [sic] going to do was clean up and paint, and that is it." Id. at 157-58.
 
 
 23
 "Okay," in response to McGraw's suggestion that he sneak work in on Saturday and Sunday in order to avoid being caught by other building inspectors, who mostly work only Monday through Friday. Id. at 160.
 
 
 24
 "Hopefully you get [sic] away with it." Id. at 161.
 
 
 25
 After accepting money from McGraw, he replied, "Let me tell you, if you do get caught, I'll take care of it." Id. at 167.
 
 
 26
 Furthermore, McGraw was impeached in a myriad of ways, thereby severely mitigating Campos's argument that the suppressed evidence would have affected McGraw's credibility. See, e.g., R.Vol. III, Doc. 47, at 14, 16-17 (McGraw admitting he bribed Campos, a public official); id. at 19 (McGraw admitting he was convicted for promoting obscenity and prostitution, and using the services of a prostitute); id. at 20-23, 52-59 (McGraw admitting he would be given immunity for testifying); id. at 22, 27, 56-59 (McGraw admitting he is involved in a civil lawsuit with an insurance company who alleges he started the fire in Shadows and admitting he has already pleaded nolo contendere to the criminal charge of arson). Finally, most aspects of the Lanza memo and plea bargain were testified to at trial by Lanza and McGraw. Campos cross-examined McGraw extensively on the relevant details of these matters. Id. at 52-59, 71, 77-78.
 
 
 27
 Thus, as indicated above, given the totality of the evidence, we are confident that there is no reasonable probability that the withheld evidence would have altered the jury's verdict.
 
 
 28
 Accordingly, the district court's denial of Campos's motion for a new trial, and Campos's conviction, are AFFIRMED.
 
 
 
 *
 This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of the court's General Order filed November 29, 1993. 151 F.R.D. 470