**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUN 24 1997**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

JOHN WILLIAM TRAPP, also known
as J.W. Trapp,

Defendant-Appellant.

No. 96-7054
(E. District of Oklahoma)
(D.C. No. CR-95-60-1-S)

**ORDER AND JUDGMENT**[*]

Before **PORFILIO**, **LUCERO,** and **MURPHY**, Circuit Judges.

Appellant John William Trapp was indicted on one count of conspiracy to

manufacture marijuana in violation of 21 U.S.C. § 846 and one count of

racketeering in violation of 18 U.S.C. § 1962(c). The jury found him guilty of the

racketeering charge. Trapp now appeals his conviction on four grounds: (1) the

government failed to prove that at least one of the predicate acts of which Trapp

was found guilty was within the statute's five year limitation period; (2) the

---

[*]This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

evidence was insufficient to sustain the jury's guilty verdict; (3) the court abused its discretion with respect to three different evidentiary rulings; and (4) the government failed to deliver all requested discovery, and Trapp discovered new evidence. This court exercises jurisdiction pursuant to 28 U.S.C. § 1291 and AFFIRMS Trapp's conviction.

## BACKGROUND

Trapp was elected Sheriff of Choctaw County, Oklahoma, on January 3, 1989 and served until he resigned in October 1995. In January 1990, the Federal Bureau of Investigation ("FBI") began investigating Trapp and his employees for requesting and receiving bribes from marijuana growers and night club owners. After a five-year investigation, the grand jury returned an indictment against Trapp on September 27, 1995, charging conspiracy to manufacture marijuana in violation of 21 U.S.C. § 846 and racketeering in violation of 18 U.S.C. § 1962(c). In support of the racketeering charge, the government alleged Trapp committed ten predicate bribery acts constituting a pattern of racketeering.[1]

Racketeering act six alleged Trapp received and agreed to receive bribes from Jimmy Allen Foley and Joe Collvins. In 1989, Foley and Collvins were growing marijuana on leased land in Choctaw County. In September or October

---

[1]Because the jury found Trapp guilty of predicate acts six, seven, and eight, we limit our discussion to only those three acts.

of 1989, Mike Mitchell, the undersheriff, arranged a meeting with Foley at which Mitchell solicited bribes in return for Mitchell and Trapp's abstention from arresting Foley and Collvins for marijuana production. Foley and Mitchell arranged a subsequent meeting at which Trapp was present. At this subsequent meeting, Trapp also solicited bribes from Collvins. Foley and Collvins agreed to pay Trapp and Mitchell $10,000 for protection from prosecution for growing marijuana. Mitchell later requested an additional $2,500 because Trapp "thought the ten was about what he should get." R. at 716-17. In either December 1989 or January 1990, Mitchell again approached Foley and told him that the payoff for 1990 growing season would be $20,000. Foley and Collvins decided not to grow marijuana in 1990.

Racketeering act seven alleged Trapp solicited a bribe from David Edward Grant, a chef who had previously been arrested for marijuana cultivation. In 1991, Trapp began investigating several complaints from Grant's neighbors about Grant shooting toward them or their property. Sometime in the summer of 1991, Trapp reprimanded Grant for the shootings and told him that if he was planning to grow marijuana on his property, he would need to pay Trapp $12,000. Later, in the summer of 1992, Trapp arrested Grant for extortion, telling Grant "that's what that twelve thousand dollars could help take care of." R. at 863-64. The charges against Grant were later dismissed.

Racketeering act eight alleged Trapp solicited a bribe from Randy Lee Chappell who ran the Fish Market in Choctaw County. Chappell sold speed and crank at the Fish Market and split the profits with Gene Wynn, owner of the Fish Market. On January 10, 1990, Trapp met with Chappell at the Fish Market and inquired about the drug sales. Trapp stated "he didn't mind a man making some money but he wanted his part of it," and indicated that he expected twenty-five percent of the money from any drug sales. R. at 563-65. Later the same day, the Fish Market was raided by state drug agents. After Chappell was arrested, Trapp met with Chappell to be sure that Chappell had said nothing to the drug agents about his solicitations. Trapp then instructed Chappell to tell the agents that Trapp had been at the fish market only to investigate rumors. While out of jail on bond two days after his arrest, Chappell contacted the FBI about the activities at the fish market and about Trapp's solicitation of bribes.

## ANALYSIS

A.   WAIVER

Trapp argues that predicate acts six, seven and eight did not occur within the five year limitation period for criminal violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961-1968.[2] In this case,

_____

[2]Predicate Acts one, two, five, and ten, as alleged in the indictment, were all within the five year statute of limitations. [Record at 15, 18-21, 25, 30]

Trapp raised the statute of limitations defense for the first time in his post-trial motions. Whether an affirmative defense has been waived is a mixed question of law and fact which "require[s] us to accept the district court's factual conclusions unless clearly erroneous but review the application of the facts to the law under a de novo standard." *F.D.I.C. v. Oaklawn Apartments*, 959 F.2d 170, 173 (10th Cir. 1992). Because whether Trapp has waived his statute of limitations defense involves primarily a consideration of legal principles, we review that claim under a *de novo* standard. *Mullan v. Quickie Aircraft Corp.*, 797 F.2d 845, 850 (10th Cir. 1986) (mixed question of law and fact is reviewed *de novo* when issue involves primarily consideration of legal principles); *see also Sheet Metal Workers Int'l Assoc. v. Air Systems Eng'g, Inc.*, 831 F.2d 1509, 1510 (9th Cir. 1987) (whether statute of limitations defense was waived was question of law subject to *de novo* review). We find Trapp waived his statute of limitations defense.

In order to prevail on a criminal RICO charge, the government must prove that one of the alleged predicate acts occurred within the five year statute of limitations. Although RICO does not expressly provide for a statute of limitations, 18 U.S.C. § 3282 contains a residual five-year criminal statute of limitations. *Agency Holding Corp. v. Malley-Duff & Associates, Inc.*, 483 U.S. 143, 146, 155 (1987) ("[T]he 5-year statute of limitations applies to criminal

RICO prosecutions [] because Congress has provided such a criminal limitations period when no other period is specified.").

Trapp relies on *Waters v. United States* for the proposition that the statute of limitations poses a jurisdictional bar and can thus be raised at any time. 328 F.2d 739, 743 (10th Cir. 1964). However, in *United States v. Gallup*, this court held, under circumstances remarkably similar to this case, the statute of limitations to be an affirmative defense, not a jurisdictional bar. 812 F.2d 1271, 1280 (10th Cir. 1987).[3] In *Gallup*, the defendant contended that "there was insufficient evidence of an overt act in furtherance of the conspiracy under § 371,

---

[3]In *United States v. Cooper*, 956 F.2d 960, 961-62 (10th Cir. 1992), this circuit reaffirmed the principal holding of *Waters*. However, both *Cooper* and *Waters* are inapposite to this case. Those cases stood for the proposition that a "substantive offense could not be prosecuted if it was not *filed* before the expiration of the limitation period." *Cooper*, 956 F.2d at 961 (emphasis added) (holding when information filed after expiration of statute of limitations, statute of limitations served as bar to prosecution without express waiver by defendant). In fact, the court in *Cooper* specifically distinguished *Gallup* because it "does not deal with the issue of whether the statute of limitation is a bar to prosecution of a substantive offense[, but rather] . . . whether, in a conspiracy case, the government had to prove an overt act charged in the indictment was committed before the limitation expired." *Id.*

*United States v. Stoner* dealt with the question whether the statute of limitations for a conspiracy charge is jurisdictional. 98 F.3d 527, 532-33 (10th Cir. 1996), *reh'g en banc granted* Mar. 3, 1997. *Stoner* involved a situation where the government had failed to allege at least one specific act in furtherance of the conspiracy within the limitations period. *Id.* Here, however, the government did allege certain predicate acts were committed within the RICO statute of limitations. It just so happened, however, that the jury only found the occurrence of three predicate acts, none of which occurred within the five-year limitations period. Thus, *Stoner* is also inapplicable to this case.

occurring within the statutory period of limitation." *Id.* The court held that Gallup had waived the statute of limitations defense because he failed to raise the issue during trial. *Id.*

It was in post-trial motions that Trapp first raised the statute of limitations as a bar. This is insufficient to preserve this issue for appeal. *See Gallup,* 812 F.2d at 1280; *see also Lyons v. Jefferson Bank & Trust*, 994 F.2d 716, 722 (10th Cir. 1993) (holding issue raised for first time in post-trial motion not preserved for appeal). In fact, this court has even held that a statute of limitations defense which was raised in the defendant's answer and pretrial order was waived because it was never mentioned again until after trial. *See Cavic v. Pioneer Astro Indus., Inc.*, 825 F.2d 1421, 1425 (10th Cir. 1987).

B.     SUFFICIENCY OF THE EVIDENCE

Trapp argues the government presented insufficient evidence to prove predicate acts six, seven, and eight. This court reviews "the evidence in the light most favorable to the government to determine whether any rational[] trier of fact could find the defendant guilty beyond a reasonable doubt." *United States v. Horn*, 946 F.2d 738, 741 (10th Cir. 1991). To prove a pattern of racketeering activity under RICO, the government "must establish two or more predicate offenses which are related to the activities of the enterprise." *United States v. Zang*, 703 F.2d 1186, 1194 (10th Cir. 1982), *cert. denied*, 464 U.S. 828 (1983).

Trapp claims the evidence supporting predicate act six was insufficient to show that Trapp, rather than Mitchell, solicited and received bribes from Collvins and Foley. A reasonable juror, however, could have found Trapp and Mitchell shared a common objective to solicit and receive bribes. Both Collvins and Foley testified as to their conversations with Mitchell and Trapp and the circumstances of the meeting between the four. This was sufficient evidence for a reasonable juror to have found Trapp guilty of predicate act six.

Trapp alleges that his conviction on predicate act seven involves an impermissible variance between the evidence at trial and the allegation in the indictment. The propriety of a variance in the evidence is a question of law reviewed *de novo*. *United States v. Cardall*, 885 F.2d 656, 670 (10th Cir. 1989). In the indictment, the government alleged that the solicitation constituting predicate act seven took place in "about the summer of 1989." At trial, however, the key witness, Grant, testified that the solicitation occurred in 1991.[4] Trapp appears to claim that this variance in dates precludes any reasonable jury from finding him guilty of predicate act seven. A variance in date alone does not establish that no rational trier of fact could have believed the witness' testimony. *See United States v. Nunez*, 668 F.2d 1116, 1127 (10th Cir. 1981) (finding jury

---

[4]We note that based on this testimony adduced at trial, predicate act number seven would have indeed fallen within the five year statute of limitations.

could reasonably convict defendant even though there was variance in time alleged in indictment and time proven at trial).

Trapp claims witness Chappell was not credible and that his testimony concerning predicate act eight was uncorroborated. Trapp thus seems to argue that no reasonable jury could have found him guilty. This court, however, has "recognized the general rule that in a criminal case a jury may convict a defendant on the *uncorroborated* testimony of an accomplice." *United States v. Sloan*, 65 F.3d 861, 863 (10th Cir. 1995), *cert. denied*, 116 S.Ct. 824 (1996). Moreover, this court has held that "[c]redibility choices are resolved in favor of the jury's verdict." *Horn*, 946 F.2d at 741. There is thus no reason to disturb the jury's finding that Trapp was guilty of predicate act eight.

## C.    EVIDENTIARY RULINGS

Trapp claims the trial court erred in making three specific evidentiary rulings. First, Trapp takes issue with what he characterizes as hearsay testimony of Mitchell, Trapp's undersheriff. We review this claim under an abuse of discretion standard. *United States v. Wolf*, 839 F.2d 1387, 1393 (10th Cir.), *cert. denied*, 488 U.S. 923 (1988) (stating district court's decision to admit statements of co-conspirator under Fed. R. Evid. 801(d)(2)(E) is reviewed for abuse of discretion).

Co-conspirator statements are not considered hearsay under Fed. R. Evid. 801(d)(2)(E) and may properly be admitted if the trial court finds: "1) a conspiracy existed; 2) both the declarant and the defendant against whom the declaration is offered were members of the conspiracy; and 3) the statement was made in the course of and in furtherance of the conspiracy." *United States v. Caro*, 965 F.2d 1548, 1557 (10th Cir. 1992). Any factual findings made by the district court underlying the decision to admit are reviewed under a clearly erroneous standard. *United States v. Peveto*, 881 F.2d 844, 852 (10th Cir.), *cert. denied*, 493 U.S. 943 (1989).

Trapp claims the district court did not make a finding that a conspiracy existed and thus the first element of *Caro* was not met. The record, however, shows that the court in fact made two such findings. Based on the cumulative testimony of several witnesses regarding Trapp's collaboration with others to solicit bribes, the district court was not clearly erroneous in finding there was sufficient evidence a conspiracy existed. Accordingly, we find the district court did not abuse its discretion by admitting Mitchell's testimony.

Trapp further claims the trial court erred when it failed to strike testimony elicited through the government's improper use of leading questions. In reviewing cases involving leading questions under Fed. R. Evid. 611(c), "we . . . reverse on the basis of improper leading questions only if 'the judge's action . . .

-10-

amounted to, or contributed to, the denial of a fair trial.'" *Miller v. Fairchild Industries, Inc.*, 885 F.2d 498, 514 (10th Cir. 1988), *cert. denied*, 494 U.S. 1056 (1990) (quoting McCormick on Evidence 12 (Cleary, ed., 1984)).

During direct examination of witness Collvins, the government improperly used leading questions. Pursuant to Fed. R. Evid. 611(c), the court admonished the government to refrain from using leading questions. Trapp, however, argues the court should have further corrected the situation by striking the testimony. Trapp claims he was prejudiced and made to look less credible when he was forced to object and to request curative admonitions in front of the jury. We find this argument unpersuasive. Having to object and to request the court to admonish the government in front of the jury do not necessarily amount to the denial of a fair trial. The district court corrected the impropriety by both sustaining Trapp's objections and admonishing the government. The district court was required to do no more. *United States v. Gant*, 487 F.2d 30, 35 (10th Cir. 1973), *cert. denied,* 416 U.S. 941 (1974) (finding district court made genuine effort to prevent improper use of leading questions).

Trapp's third evidentiary claim is that the court should have stricken Foley's testimony because he invoked his Fifth Amendment right against self incrimination on certain questions during cross examination. When Foley invoked this right during trial, Trapp neither made a motion to strike nor to order

the witness to answer. We thus review this claim under a plain error standard. *United States v. Young*, 470 U.S. 1, 6-7 (1985).

Trapp relies on *United States v. Montgomery* to argue the trial judge should have stricken Foley's testimony. 998 F.2d 1468 (9th Cir. 1993). In *Montgomery*, the Ninth Circuit found the district court did not abuse its discretion in striking a witness' entire testimony after the witness refused to submit to cross examination. *Montgomery*, 998 F.2d at 1479. It does not follow from *Montgomery*, however, that a court is always required to strike testimony when a witness invokes the Fifth Amendment. Rather, "'[t]he district court's power to control the conduct of trial is broad.'" *Id.* (quoting *United States v. Parza*, 612 F.2d 432, 438 (9th Cir. 1979)).

In *United States v. Esparsen*, 930 F.2d 1461, 1469 (10th Cir. 1991), *cert denied*, 502 U.S. 1036 (1992), this court stated:

> Courts have balanced [the competing concerns of the right to present witnesses with the goal of eliciting the truth through cross examination] by drawing a line between direct and collateral matters. . . . When the refusal to answer cross-examination questions involves collateral matters, we have held in the analogous situation of a prosecution witness who invokes the fifth amendment that the testimony should not be struck.

The questions which Foley refused to answer dealt with factual issues in pending charges against him in a different state. These were clearly not matters directly affecting Trapp's case. Trapp claims the questions were relevant to credibility.

-12-

Before he refused to answer Trapp's questions, however, Foley had already admitted several times that he had grown marijuana in the past. Thus, Trapp's desire to diminish the witness' credibility had already been achieved; his ability to search for the truth during cross examination was not impaired.

We therefore find the district court did not err in making the three challenged evidentiary rulings.

D.    FAILURE TO PRODUCE DISCOVERY AND NEW EVIDENCE

Trapp claims the government violated Fed. R. Crim. P. 16(a)(1)(D) by failing to deliver all requested discovery. Here again, Trapp claims the evidence purportedly withheld was relevant to credibility of witnesses. He asserts the following matters were withheld by the government: 1) evidence of a felony check charge against a witness; 2) evidence of prior state charges against a witness; 3) dismissal of state charges against the same witness; and 4) results of a witness' polygraph test.

According to Trapp, the government's failure to disclose the witness' complete criminal records and polygraph test violates *Brady v. Maryland*, 373 U.S. 83 (1963). "[C]laims that the prosecution violated *Brady*, including the determination of whether suppressed evidence was material," are reviewed *de novo*. *United States v. Hughes*, 33 F.3d 1248, 1251 (10th Cir. 1994). "To establish a *Brady* violation, the defendant must establish: 1) that the prosecution

-13-

suppressed evidence; 2) that the evidence was favorable to the accused; and 3) that the evidence was material." *Id.*

Trapp presented no evidence to establish the government suppressed any evidence. Trapp merely states that the government should have turned over all evidence of an exculpatory nature with respect to the witnesses. Counsel's cross examination of those witnesses, however, indicates that Trapp knew of the criminal charges against the witnesses.

With respect to Trapp's claim that the government suppressed the results of a witness' polygraph test, it is true the government did not disclose those results. The government, however, states it had no intention of introducing the evidence and the test results were in fact never introduced. Under those conditions, there was no *Brady* violation. *See United States v. Hall*, 805 F.2d 1410, 1417-18 (10th Cir. 1986) (finding when government does not intend to introduce results of polygraph at trial, "the charts and reports [are] not discoverable under the provisions of Rule 16(a)(1)(D) Fed. R. Crim. P.").

Trapp also seeks a new trial based on newly discovered evidence. "The allegedly newly discovered evidence must be more than impeaching or cumulative; it must be material to the issues involved; it must be such that it would probably produce an acquittal; and a new trial is not warranted if the new evidence is such that, with reasonable diligence, it could have been discovered

and produced at the original trial." *United States v. Youngpeter*, 986 F.2d 349, 356 (10th Cir. 1993).

The newly discovered evidence is a witness's statement that he "was going to lie about everything to just hang J.W. Trapp." R. at 1469. Trapp gives no explanation why he could not have discovered this evidence with reasonable diligence prior to or during the trial. More important, Trapp makes no showing that this evidence is material. He argues that the evidence would have been used for impeachment purposes and states that "[i]f the jury had known the true circumstances surrounding the witnesses," the jury would have acquitted Trapp as to predicate acts six and seven. This alone is insufficient. According to *Youngpeter*, the "newly discovered evidence must be more than impeaching." 986 F.2d at 356. Trapp is therefore not entitled to a new trial.

## CONCLUSION

For the reasons set forth above, we **AFFIRM** the conviction entered in the United States District Court for the Eastern District of Oklahoma.

ENTERED FOR THE COURT,

Michael R. Murphy
Circuit Judge

-15-